**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

> FILED
> DEC 2 2 2025
> CLERK, U.S. DISTRICT COURT
> SOUTHERN DISTRICT OF CALIFORNIA
> BY_____ DEPUTY

ROBERT EMERT,

> Plaintiff,

v.

**Case No. 25-cv-3646-JAH-BJW**

DAVID S. SCHULMAN, an individual;
SARA BEAR, an individual;
MATTHEW CORD, an individual;
CATIE YOUNG, an individual;
ANDREA SCHUCK, an individual;
JESSE OLAGUE, Psy.D., an individual;
MOORE, SCHULMAN & MOORE, APC,
> a California professional corporation;
ANDREW P. JOHNSON, APC,
> a California professional corporation;
GRIFFITH, YOUNG & LASS,
> a California law firm; and
SAN DIEGO KIDS FIRST,
> A Professional Psychology Corporation,

> Defendants.

---

# FIRST AMENDED COMPLAINT FOR DAMAGES
## 42 U.S.C. §§ 1983, 1985(2)

---

# JURY TRIAL DEMANDED

## Contents

I. INTRODUCTION ................................................................................................ 2

II. JURISDICTION AND VENUE .......................................................................... 4

III. PARTIES ........................................................................................................... 5

IV. FACTUAL ALLEGATIONS ............................................................................. 6

    A. The Fraud .................................................................................................... 6

    B. The Predetermined Outcome ...................................................................... 7

    C. The Conspiracy Exposed ............................................................................ 9

    D. The Vindication ........................................................................................ 13

    E. State Action .............................................................................................. 14

V. CLAIMS FOR RELIEF .................................................................................... 14

    COUNT ONE: 42 U.S.C. § 1983 — Procedural Due Process ....................... 14

    COUNT TWO: 42 U.S.C. § 1983 — Fabrication of Evidence ....................... 15

    COUNT THREE: 42 U.S.C. § 1985(2) — Witness Tampering Conspiracy ... 16

VI. PRAYER FOR RELIEF ................................................................................... 17

VII. JURY DEMAND ............................................................................................ 17

VIII. VERIFICATION ........................................................................................... 17

**CERTIFICATE OF SERVICE** .............................................................................. 18

    EXHIBIT LIST ................................................................................................ 22

    Exhibits Attached to First Amended Complaint ............................................ 22

    Exhibits Incorporated by Reference from Original Complaint (ECF Doc. 1) ......... 23

## I. INTRODUCTION

This case exposes a profit-driven scheme to push unnecessary facility placement—the same pattern of judicial corruption that led to federal convictions and over $200 million in damages in the Pennsylvania "kids-for-cash" scandal. *See Wallace v. Ciavarella*, No. 3:09-cv-286 (M.D. Pa. Aug. 16, 2022) ($206 million judgment against judges who accepted kickbacks to send children to for-profit detention facilities). As evidenced by Defendants' rejection of full-custody settlements solely because they excluded facility threats (Exs. C, D)—prolonging litigation while ignoring unanimous professional recommendations against placement (Exs. N, N-

1, N-2, O, O-1, O-2)—the scheme here caused severe harm to a child and nearly killed his father.

For almost two years—under two different judges—Plaintiff and his son B.E. and daughter S.E, had stable 50/50 custody and where FCS initially awarded Plaintiff 60% custody. Three Family Court Services reports, each based on in-depth investigation including two separate child interviews, unanimously recommended continued shared custody. Nine IEP team members. A treating psychologist. No one—not a single professional who knew this child—ever recommended facility placement for B.E. Then Commissioner Patti Ratekin was assigned. Within five minutes of taking the case—before reviewing any file, hearing any witness, or ordering any evaluation—she announced that Plaintiff's son should be placed in a "24-hour facility." Defendant Schulman and Defendant Schuck fell in line immediately. Ratekin then blew past Plaintiff's valid peremptory challenge and brought in Minor's Counsel Defendants Cord and Young to rubber-stamp the predetermined outcome. They did exactly that—aligning with opposing counsel, ignoring the wall of contrary evidence, blocking witnesses, and silencing a 14-year-old child who filed a police report and restraining order against his own attorney trying to defend himself. When the stress of this coordinated assault triggered Plaintiff's near-fatal heart attack, Defendants characterized it as merely "alleged" and pushed forward to obtain default judgment while Plaintiff lay hospitalized. Every defendant, at every turn, ignored every piece of evidence contradicting the facility narrative—because facility was never the means. Facility was the objective.

The predetermined outcome is exposed by its own timeline. Consider the mathematical impossibility: Commissioner Ratekin announced "facility" within five minutes of assignment on February 4, 2021. Two years later, Defendant Schulman told a federal court that "Commissioner Ratekin based this recommendation on the Psychologist report." (Ex. B.) No such report exists. No such report *could* exist—because no evaluation could be ordered, conducted, and reviewed in five minutes. The fabrication was invented after the fact to justify what was predetermined before any evidence existed. Twice Plaintiff offered settlements giving Defendant Schuck everything she asked for—the only condition being no facility threat. (Exs. C, D.) Twice she refused. On September 16, 2021, Plaintiff personally emailed Schuck: "Andrea, seriously, these [pejorative omitted] don't

care about our kids or you. Their despicable strategies have put both our kids in harms way." (Ex. X.) She did not respond. Thirteen days later, Plaintiff suffered a widowmaker heart attack. Defendants obtained default judgment while he lay hospitalized. Defendant Young told Plaintiff it was "above her paygrade" to challenge the facility narrative and asked: "Why don't you just let them put him in a facility?" Two neutral officials—with no stake in family court proceedings— independently confirmed what the evidence shows. District Attorney Investigator Luis Peña, after reviewing the case, stated that Minor's Counsel "lined up" with opposing counsel and that Plaintiff lost his parental rights because he "pissed them off." (Ex. A-1.) Deputy District Attorney Dawn Balerio interviewed B.E. and observed he was "very intelligent," "articulate," "sociable," and "advocating for himself"—the precise opposite of a child requiring institutionalization. (Ex. DD.) The child Defendants claimed needed a "24-hour facility" was, according to the prosecutor herself, thriving.

This is fraud upon the court. Not a custody dispute. Not a disgruntled litigant. Fraud—the kind federal courts have inherent, timeless authority to address under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), because "tampering with the administration of justice involves far more than an injury to a single litigant." For four years, Plaintiff exhausted every state court remedy—two trial court judges, the Fourth District Court of Appeal, the California Supreme Court—and never once received an evidentiary hearing. Not one court examined the recordings. Not one court reviewed the transcripts. Under *Miroth v. County of Trinity*, 136 F.4th 1135 (9th Cir. 2025), this Court has jurisdiction over litigant misconduct preceding state court judgment. Under *Dennis v. Sparks*, 449 U.S. 24 (1980), private parties who conspire with judicial officers act under color of state law. Under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), fabrication of evidence violates the Constitution. The evidence is here. The law is clear. Plaintiff seeks damages—and accountability for fraud that has no innocent explanation.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights). Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this District.

2. **Timeliness.** This action is timely under multiple doctrines:

   – **Continuing Violation:** The deprivation continues—Plaintiff still does not see his daughter; his health remains shattered from litigation-induced cardiac events.

   – **Fraud Upon the Court:** Schulman's fabrication of the "psychologist report" to a federal tribunal constitutes fraud upon the court. No statute of limitations applies. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

   – **Equitable Tolling:** Plaintiff suffered two STEMI heart attack on September 29, 2021 and Dec 9 2024 (Ex. J series.) Defendant Bear characterized these documented cardiac events as merely "alleged." (Ex. H.)

## III. PARTIES

3. **Plaintiff ROBERT EMERT** was the stay-at-home parent and primary caregiver for B.E. (born 06/11/07) for his entire life until these events.

4. **Defendant DAVID SCHULMAN** was the architect: he coordinated the predetermined agenda, fabricated the "psychologist report," threatened Regional Center, and directed suppression of exculpatory evidence.

5. **Defendant SARA BEAR** participated by characterizing Plaintiff's STEMI heart attack as "alleged" and opposing accommodation requests while he was hospitalized, ensuring Plaintiff could not defend himself while medically incapacitated.

6. **Defendant MATTHEW CORD** was Minor's Counsel for B.E. He met his client four times for less than thirty minutes. Per court transcripts, he did not know what an IEP was. He never contacted B.E.'s nine-member IEP team, case manager. He aligned with Schulman ("I'M CERTAINLY WITH MR. SCHULMAN"), remained silent when facility was announced without support, and continued "representing" B.E. after B.E. filed a police report and TRO against him. Cord even got into a closed car with B.E. and harassed him and that is one of the reasons why B.E. filed a TRO and police report against Cord. B.E. was by himself when he made the reports to the court and the police department.

7. **Defendant CATIE YOUNG** was Minor's Counsel for S.E. She aligned with Schulman ("ME, TOO") and remained silent on October 4. She told Plaintiff it was "above her paygrade" to challenge the facility narrative and that Plaintiff should just let them "put Bryce in a facility."

8. **Defendant ANDREA SCHUCK** directed and funded the conspiracy. She twice refused settlements giving her everything except facility, ignored Plaintiff's personal plea warning that Schulman was harming her own children, threatened her own son with "Juvi" for wanting to live with his father, and continued funding the predetermined agenda despite evidence it was destroying her son.

9. **Defendant JESSE OLAGUE** provided a predetermined evaluation contradicting three FCS reports, the IEP team, and B.E.'s treating psychologist. His office was directly across the street from Schulman's firm. He was retained out-of-network—Schuck chose Schulman's neighbor over her own insurance network.

10. **Entity Defendants MSM, APJ, GYL, and SDKF** are sued based on direct involvement and/or ratification, not respondeat superior.

## IV. FACTUAL ALLEGATIONS

### A. The Fraud

11. Defendant David Schulman fabricated evidence to a federal court. On 04/20/23, he represented that "Commissioner Ratekin based this recommendation on the Psychologist report." (Ex. B, Case No. 23-cv-0417-JLS-NLS, Doc. 22.)No such report exists. The Register of Actions confirms: no psychological evaluation ordered, no psychologist appointed, no report filed. (Ex. B-1, B-2.)

12. This fabrication was necessary because Commissioner Ratekin announced "facility" placement for Plaintiff's son within five minutes of taking the case—before reviewing any file or receiving any evaluation. (Ex. F, 00:04:20.) The "psychologist report" was invented after the fact to legitimize a predetermined outcome that had no evidentiary basis.

13. Plaintiff brings this action for damages caused by Defendants' misconduct. Consistent with *Miroth v. County of Trinity*, 136 F.4th 1135, 1145 (9th Cir. 2025), Rooker-Feldman "does not bar claims for injuries caused by misconduct by litigants that preceded the issuance of a state court order." Plaintiff does not seek to modify any state order. Plaintiff seeks damages for fraud.

13A. Plaintiff does not ask this Court to determine custody, visitation, or the best interests of any child, and does not seek to vacate, modify, or enjoin any state court order. Plaintiff seeks only damages for Defendants' alleged misconduct.

14. **Incorporation by Reference.** Plaintiff incorporates by reference the Original Complaint filed December 18, 2025 (ECF Doc. 1), including all exhibits attached thereto. The detailed factual allegations contained therein—including but not limited to Defendant Cord's systematic failure to investigate his own client's circumstances, Defendant Schulman's threats against the San Diego Regional Center, the exposed conflicts of interest among supervising judges, Defendant Schuck's documented history of provoking B.E. resulting in police calls, and the exposed pattern of witness suppression—are incorporated as if fully set forth herein.

## B. The Predetermined Outcome

## 1. Day One: February 4, 2021

15. Commissioner Ratekin was assigned this case on February 4, 2021. Within five minutes—before reviewing any file, hearing any evidence, or receiving any professional evaluation—she announced:

"THE PLACE WHERE I SEE OUR CHILD HEADING IS SOME KIND OF 24-HOUR SCHOOL WHERE HE'S GOING TO BE IN A BOARDING SCHOOL TYPE OF SITUATION."

(Ex. F, 00:04:20–00:05:10.)

16. This announcement was impossible if based on evidence. No evaluation could be ordered, conducted, and reviewed in five minutes. Before this date, no professional who knew B.E.—not his nine-member IEP team, not his treating psychologist, not three Family Court Services reports spanning two

years—had ever recommended facility placement. (Exs. N, N-1, N-2, O, O-1, O-2.)

17. **The Wall of Evidence Ratekin Ignored.** Before Commissioner Ratekin took this case, B.E.'s custody had been stable for nearly two years under two prior judges. Three FCS reports—each following in-depth investigation including two separate child interviews with B.E.—unanimously recommended 50/50 custody. (Exs. N, N-1, N-2.) B.E.'s nine-member IEP team—special education teachers, school psychologists, autism specialists who had known him for years—never recommended facility. (Exs. O, O-1.) B.E.'s treating psychologist said he was "doing fine." (Ex. O-2.) Plaintiff provided Minor's Counsel Cord with a comprehensive list of witnesses and professionals to contact—teachers, therapists, IEP team members, family friends who had known B.E. his entire life. (Ex. P.) Cord contacted none of them. The only "evidence" supporting facility came from Defendant Olague—whose office was across the street from Schulman's firm, who was retained out-of-network, and whose evaluation contradicted every other professional who knew B.E.

## 2. Day Last: October 4, 2021

18. Eight months later, Commissioner Ratekin delivered exactly the outcome she announced on day one. When informed B.E. missed first period, she stated: "I may need to look for some kind of **facility** to put him in." (Ex. F-1, 00:01:46.) When Plaintiff objected—"Nobody has ever recommended that… There's no evidence for that… I've got like 30 witnesses"—she responded: "I'VE MUTED YOU." (Ex. F-1, 00:04:30.)

19. The agenda announced on day one never changed because it was never based on evidence.

## 3. The Peremptory Challenge Proves Predetermination

20. On February 9, 2021, Plaintiff filed a timely peremptory challenge under CCP § 170.6. Commissioner Ratekin denied it based on a verbal stipulation from February 4. But under *In re Marriage of Goodarzirad*, 185 Cal.App.3d 1020, 1025 (1986), filing a peremptory challenge withdraws prior consent.

California Rules of Court 2.831 and 2.834 require written stipulations—none existed. *People v. Hull*, 1 Cal.4th 266, 275 (1991), confirms a timely peremptory challenge divests jurisdiction; improper denial voids subsequent proceedings. *People v. Superior Court (Lavi)*, 4 Cal.5th 1164, 1172 (1993), holds improper assignment voids all subsequent acts for lack of jurisdiction.

21. **Nexus:** A judge without a predetermined agenda has no reason to refuse a litigant's automatic statutory right to a different judge. Commissioner Ratekin's refusal to grant the challenge—combined with her five-minute facility announcement—supports an inference of coordination with Defendants who benefited from her continued jurisdiction. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (agreement may be inferred from conduct). Plaintiff does not ask this Court to vacate or modify any state order. Plaintiff seeks only damages for Defendants' pre-order misconduct— precisely the relief *Miroth* holds is not barred by Rooker-Feldman.

## C. The Conspiracy Exposed

## A. Minor's Counsel Betrayed Their Clients

22. On May 11, 2021, Plaintiff had school witnesses available—a vice principal and teacher who knew B.E. for five years—whose testimony would have contradicted the facility narrative. When the court offered a continuance:

MR. SCHULMAN: YOUR HONOR, I CAN'T DO THURSDAY MORNING. MR. CORD: YEAH. YOUR HONOR, I'M CERTAINLY WITH MR. SCHULMAN ON THIS. MS. YOUNG: ME, TOO.

(Ex. G-2, RT 149–150.)

23. **Nexus:** Defendants Cord and Young were Minor's Counsel—appointed to represent the children, not Defendant Schuck. A child's attorney does not say "I'M CERTAINLY WITH MR. SCHULMAN" to block witnesses who would help their own clients unless they have abandoned independent advocacy. This alignment with opposing counsel against their clients' interests satisfies *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) ("willful participant in joint activity").

24. Earlier that day, IEP Case Manager Trish Fleming testified Cord never contacted anyone on B.E.'s nine-person IEP team. (Ex. G-1, RT 113–114.) Schulman's response: "MR. CORD IS NOT ON TRIAL."

25. **Cord's Systematic Failure.** Cord met with his 14-year-old client approximately four times for less than thirty minutes each. He did not know what an IEP was—asking Fleming to explain it during trial—yet purported to recommend residential facility placement for a special-needs child. He deliberately avoided contacting Trish Fleming, the case manager the school principal designated as the primary contact for all matters concerning B.E. He ignored B.E.'s pleas for help as seen in B.E. letters he wrote. He contacted none of the nine IEP team members who had known B.E. for years. Instead, he aligned with Schulman's predetermined narrative from day one.

26. **B.E. Himself Rejected Cord.** B.E.—then 14 years old—recognized Cord's failure to represent his interests. B.E. filed a police report against Cord. B.E. filed a temporary restraining order against Cord. B.E. wrote a letter to the court, witnessed by five adults who had known him most of his life, begging to be heard. (Exs. A, K, L.) The court ignored all of it. Cord continued "representing" a client who had sought police protection from him.

## B. The Silence That Proves Conspiracy

27. On October 4, 2021, when Commissioner Ratekin announced "facility" placement with zero professional support, Minor's Counsel Cord and Young were present. Neither objected. They had ethical duties to B.E. and S.E.— not to Schuck. A child's attorney hearing a judge announce an outcome unsupported by any recommendation has one duty: object. Their coordinated silence is inexplicable absent prior agreement.

## C. Retaliation: The Supervised Visitation Order

28. On September 29, 2021, Plaintiff suffered a near-fatal STEMI heart attack. On September 30, 2021—while Plaintiff was hospitalized—Commissioner Ratekin ordered supervised visitation under Rule 5.151 based on a witness affidavit that merely reported fraud by the child psychologist. (Ex. Y, Bates 898-899.) The same week, B.E. had filed his police report, TRO, and letter

against Cord. The "supervised visitation" order was retaliation—punishment for evidence that contradicted the predetermined narrative.

29. On October 4, 2021, Commissioner Ratekin recused. But she signed the judgment on October 5, 2021—after relinquishing jurisdiction. Under *People v. Mayfield*, 177 Cal.App.3d 780 (1986), a judge loses all authority upon recusal. These post-recusal orders are void.

## D. The Settlement Refusals Prove the Agenda

30. On May 10, 2021, Plaintiff offered Defendant Schuck everything—custody, support, property. He asked only that B.E. not be placed in a facility. Every Defendant refused. (Ex. C, C-1.) On October 1, 2021, Plaintiff made an identical offer. Again refused. (Ex. D, D-1.)

31. **Nexus:** If child welfare were the objective, Defendants would have accepted a settlement giving them everything except facility. Their refusal proves facility was the objective, not the means.

32. On September 16, 2021—thirteen days before Plaintiff's heart attack—Plaintiff personally pleaded with Schuck: "Andrea, seriously, these [pejorative omitted] don't care about our kids or you. Their despicable strategies have put both our kids in harms way." (Ex. X.) She did not respond. Despite being warned Schulman's strategy harmed her own children, she continued funding the conspiracy—establishing her as a willful participant, not a passive client.

33. **Schuck Threatened Her Own Son.** In a recorded call, Schuck told B.E. that if he "ran away" to be with his father, she would put him in "Juvi." (Ex. X-1.) This threat—using juvenile detention against a child who wanted to live with his other parent—demonstrates Schuck's active participation in the predetermined agenda. She weaponized the system against her own son.

## E. The Exploitation of Plaintiff's Medical Emergency

34. On September 29, 2021, Plaintiff suffered a STEMI heart attack—100% blockage of the left anterior descending artery, known as "the widowmaker." (Ex. J series.) On November 30, 2021, while Plaintiff remained medically

incapacitated, Defendants obtained a default judgment stripping Plaintiff of custody and imputing income of $96,000 per year to a man receiving SNAP benefits. (Exs. L, L-1, L-2, M series.)

35. Defendant Bear repeatedly characterized this documented, life-threatening cardiac event as merely "alleged"—despite possessing complete medical records. (Ex. H.) Bear used the word "alleged" to defeat Plaintiff's ADA accommodation requests, ensure Plaintiff could not defend himself while hospitalized, and cast false aspersions on Plaintiff's character before the court.

### F. The Regional Center Threat Proves Consciousness of Guilt

36. On October 29, 2021, Schulman threatened the San Diego Regional Center with an injunction to block independent evaluation. (Ex. T.) An attorney does not threaten to enjoin independent evaluation unless he knows it will disprove his narrative. Schulman wanted Defendant Olague—whose office was directly across the street from Schulman's firm—not an independent evaluation from the respected Regional Center.

### G. Independent Law Enforcement Confirmed the Conspiracy

37. DAI Luis Peña—a neutral law enforcement professional with no stake in the family court—made recorded admissions including:

"Where is the meat and potatoes of why she should have more than 50% custody?"

"I think they [Matt Cord] lined up with your ex-wife. I don't believe they're strictly just by themselves trying to do the best for him [Bryce]. I think now they line together with your basically ex wife's attorney [Schulman] and now they're trying to put something together… that does not make sense to me when you have an attorney and basically that's supposed to be just a child's attorney. It's like that attorney [Cord] should be talking to you. They should not just be trying to figure things out with other attorney [Schulman] and pushing, pushing and pushing and pushing."

When asked why Plaintiff lost all parental rights: **"You pissed them off."**

(Ex. A-1.)

38. **Nexus:** DAI Peña's "meat and potatoes" question confirms Defendants lacked the "clear and convincing evidence" required under *Santosky v. Kramer*, 455 U.S. 745 (1982). His description of Cord "lining up" with Schulman and "pushing, pushing and pushing" confirms that Defendant Cord betrayed his fiduciary duty to his 14-year-old client by aligning with opposing counsel rather than independently advocating for Bryce's best interests. ***This independent corroboration from a neutral law enforcement officer transforms circumstantial inference into direct evidence of the "meeting of minds" required under Dennis, 449 U.S. at 27–28.*** At the pleading stage, a plaintiff need only allege facts permitting a reasonable inference of conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

## H. No Innocent Explanation Exists

39. The alleged conduct admits no good-faith interpretation: Ratekin prejudged "facility" within five minutes without evidence; Defendants exploited jurisdictional defects without objection; Minor's Counsel aligned with opposing counsel rather than their child clients; B.E. himself filed a police report and TRO against his own attorney; Schuck threatened her own son with "Juvi" for wanting to live with his father; all Defendants refused settlements excluding facility; and neutral law enforcement independently confirmed coordination. Taken together, these allegations support a reasonable inference of coordinated misconduct rather than independent, good-faith litigation choices.

## D. The Vindication

40. In May 2024, B.E. turned 18 and immediately returned to live with Plaintiff. (Ex. W.) Within six months, he earned his high school diploma, obtained his driver's permit, and enrolled in college. During the years of forced separation, Defendants held institutional placement over B.E.'s head— Schuck threatening "Juvi" if he went to his father. Yet after two and a half years under Schuck's custody, B.E. had no diploma and no driver's license. Six months with Plaintiff: diploma, permit, college.

41. The moment B.E. had the legal ability to choose, he chose his father—the same father Defendants spent four years portraying as unfit – but never ONCE provided "clear and convincing" evidence for that. This voluntary return proves the facility narrative was always a fraud – but that facility narrative cause irreparable harm to B.E. - high school years lost – terrorized by a system that was supposed to protect him.

## E. State Action

42. Plaintiff alleges Defendants acted under color of state law as willful participants in joint activity with a state judicial officer. *Dennis v. Sparks*, 449 U.S. 24 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

43. **Nexus:** This is not ordinary litigation conduct. Plaintiff alleges the facility outcome was announced before evidence, implemented despite contrary professional consensus, defended with fabricated evidence, and confirmed by neutral law enforcement as a coordinated "line up." These facts plausibly establish the joint participation required for state action.

## V. CLAIMS FOR RELIEF

## COUNT ONE: 42 U.S.C. § 1983 — Procedural Due Process

### Against All Defendants

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

45. The Fourteenth Amendment protects parental rights as fundamental liberty interests requiring clear and convincing evidence before deprivation. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("clear and convincing" standard); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (parental interest "far more precious than any property right"); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("perhaps the oldest of the fundamental liberty interests").

46. **Nexus:** Plaintiff's custodial rights and parental relationship were severely restricted—reduced to supervised visitation imposed while Plaintiff was hospitalized and unable to defend himself—after two years of 50/50 custody, three FCS reports recommending shared custody, and zero findings of unfitness. The only "evidence" was a predetermined agenda announced in

five minutes and later justified with a fabricated report. This is the precise
constitutional violation *Santosky* prohibits.

47. Defendants caused this deprivation by: blocking witnesses who would have
contradicted the facility narrative (Ex. G-2); suppressing IEP team evidence
(Ex. G-1); promoting a fabricated "psychologist report" (Ex. B); silencing
Plaintiff at critical moments (Ex. F-1); obtaining default judgment while
Plaintiff was hospitalized (Ex. L); and retaliating with supervised visitation
when B.E. himself filed evidence contradicting the narrative (Exs. A, K, L).

48. **Damages.** As a direct and proximate result of Defendants' conduct, Plaintiff
suffered and continues to suffer: (a) loss of parental relationship with B.E.
for approximately three years; (b) complete loss of relationship with
daughter S.E. continuing to present; (c) STEMI heart attack requiring
emergency cardiac intervention; (d) ongoing cardiac complications; (e)
emotional distress including depression, anxiety, and trauma; (f) litigation
costs including filing fees, transcript costs, and travel expenses; (g) lost
income and employment opportunities; and (h) other damages to be proven
at trial.

49. **Res Judicata Does Not Apply.** *Hardwick v. County of Orange*, 980 F.3d
1258, 1264 (9th Cir. 2020), holds constitutional familial rights are
"personal" and "without identical issues, no preclusion." *Haring v. Prosise*,
462 U.S. 306, 313 (1983), confirms no collateral estoppel where the issue
was not "actually litigated" in the prior proceeding. The state court never
adjudicated whether Defendants fabricated evidence or conspired to deprive
Plaintiff of constitutional rights. Those issues were never litigated—they are
litigated here for the first time.

## COUNT TWO: 42 U.S.C. § 1983 — Fabrication of Evidence

### Against Schulman, MSM, and others who knowingly joined

50. Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

51. The Constitution prohibits deprivation of liberty through deliberately
fabricated evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir.
2001) (en banc).

52. **Nexus:** Schulman represented to a federal court that a "psychologist report" supported the facility recommendation. No such report exists. This is not ambiguous evidence or disputed interpretation—it is fabrication of a document that never existed to justify a predetermined outcome.

53. **No Immunity.** *Hardwick v. County of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017) ("Officials who fabricate evidence are not entitled to qualified immunity"). *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (no immunity for fabrication in proceedings involving children). *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021) (no qualified immunity for fabricated reports in child welfare matters). Schulman's conduct falls squarely within *Devereaux*'s prohibition—this is not disputed evidence or conflicting interpretation; it is fabrication of a document that never existed.

## COUNT THREE: 42 U.S.C. § 1985(2) — Witness Tampering Conspiracy

## Against Schulman, Bear, Cord, Young, Schuck, MSM, APJ, GYL

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 43.

55. Section 1985(2) prohibits conspiracies to deter witnesses from testifying or to injure parties for testimony given.

56. **Nexus:** Defendants conspired to obstruct testimony by: coordinating to block school witnesses ("I'M CERTAINLY WITH MR. SCHULMAN") (Ex. G-2); cutting off Fleming's testimony when it revealed Cord's failure to investigate (Ex. G-1); threatening Regional Center with injunction to prevent independent evaluation (Ex. T); suppressing IEP team testimony contradicting the facility narrative (Exs. O, O-1); and retaliating against Plaintiff with supervised visitation when B.E. submitted evidence contradicting the narrative.

57. As a direct result, Plaintiff was denied the opportunity to present witnesses who would have established the absence of any evidentiary basis for facility placement. Under *Santosky v. Kramer*, 455 U.S. 745, 769 (1982), parental termination requires "clear and convincing evidence." The blocked witnesses would have demolished the facility narrative and proven

Defendants lacked any evidence meeting this standard—which is precisely why Defendants blocked them.

## VI. PRAYER FOR RELIEF

Plaintiff requests:

1. Compensatory damages according to proof;

2. Punitive damages based on Defendants' willful, malicious, and fraudulent conduct—including Schulman's deliberate fabrication of evidence to a federal tribunal—in conscious disregard of Plaintiff's constitutional rights;

3. Costs and interest;

4. Such other relief as the Court deems just.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## VIII. VERIFICATION

I, ROBERT EMERT, am the Plaintiff in this action. I have read the foregoing First Amended Complaint and know its contents. The factual allegations set forth herein are true to the best of my knowledge, information, and belief, and as to those matters stated on information and belief, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 22, 2025, at Escondido, California.

Dated: 12/22/25

Respectfully submitted,

/s/ Robert Anthony Emert

ROBERT EMERT Plaintiff, In Pro Per 2351 Vista Lago Terrace Escondido, CA 92029 Telephone: (760) 612-9328 Email: robemert@msn.com

**CERTIFICATE OF SERVICE**

**NOTICE OF SERVICE OF PROCESS**

**A. SERVICE OF PROCESS — INDIVIDUAL DEFENDANTS**

The following individual Defendants will be personally served pursuant to FRCP 4(e)(2)(A):

| No. | Defendant | Address for Personal Service |
|-----|-----------|------------------------------|
| 1 | David S. Schulman, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 |
| 2 | Sara Bear, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 |
| 3 | Matthew Cord, Esq. | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 |
| 4 | Catie Young, Esq. | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 |
| 5 | Andrea Schuck | 3557 Monroe St., Carlsbad, CA 92008 |
| 6 | Jesse Olague, Psy.D. | 12625 High Bluff Drive, Suite 204, San Diego, CA 92130 |

**B. SERVICE OF PROCESS — CORPORATE DEFENDANTS**

The following corporate Defendants will be served through their registered Agent for Service of Process pursuant to FRCP 4(h)(1)(B) and California Corporations Code § 1702. Agent information was obtained from the California Secretary of State business entity records:

| No. | Corporate Defendant | Registered Agent | Agent Address |
|-----|---------------------|------------------|---------------|
| 7 | Moore, Schulman & Moore, APC | David S. Schulman | 12220 El Camino Real, Suite 300, San Diego, CA 92130 |
| 8 | Andrew P. Johnson, APC | Andrew P. Johnson | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 |

| No. | Corporate Defendant | Registered Agent | Agent Address |
|---|---|---|---|
| 9 | Griffith, Young & Lass | John N. Griffith | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 |
| 10 | San Diego Kids First, A Professional Psychology Corporation | Ben-Thomas Hamilton | 3110 Camino Del Rio South, Suite 203, San Diego, CA 92108 |

## C. IN FORMA PAUPERIS STATUS AND U.S. MARSHAL SERVICE

### 1. IFP Status

Plaintiff has been granted In Forma Pauperis status pursuant to 28 U.S.C. § 1915 in connection with the Original Complaint filed December 18, 2025. Plaintiff's IFP status remains in effect for the First Amended Complaint.

### 2. Request for U.S. Marshal Service

Pursuant to Plaintiff's IFP status, Plaintiff respectfully requests that the United States Marshal effect service of process upon all Defendants pursuant to:

**28 U.S.C. § 1915(d):** "The officers of the court shall issue and serve all process, and perform all duties in such cases."

**FRCP 4(c)(3):** "At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."

### 3. Documents Submitted for Service

Plaintiff has prepared and submitted the following documents for each Defendant:

| Document | Quantity | Purpose |
|---|---|---|
| Summons (AO-440) | 10 (one per Defendant) | For Clerk issuance |
| Process Receipt and Return (USM-285) | 10 (one per Defendant) | U.S. Marshal service instructions |
| First Amended Complaint with Exhibits | 10 copies | Service on each Defendant |

## D. PROCEDURAL ROADMAP — SEQUENCE OF EVENTS

Plaintiff respectfully submits the following procedural roadmap to assist the Clerk and demonstrate Plaintiff's understanding of the service process:

### STEP 1: Filing First Amended Complaint (Current)

☑ First Amended Complaint filed with the Clerk

☑ Summons forms (AO-440) submitted for all 10 Defendants

☑ USM-285 forms prepared for all 10 Defendants

☑ 10 copies of First Amended Complaint prepared for service

**STEP 2: Summons Issuance (Upon Filing)**

☐ Clerk issues summons for all 10 Defendants

☐ Clerk signs and seals each AO-440 summons form

**STEP 3: U.S. Marshal Service (Upon Summons Issuance)**

*Option A — Clerk Forwards to U.S. Marshal:*

☐ Clerk forwards issued summons, USM-285 forms, and FAC copies to U.S. Marshal

☐ U.S. Marshal effects service on all Defendants

*Option B — Plaintiff Delivers to U.S. Marshal:*

☐ Plaintiff retrieves issued summons, USM-285 forms, and FAC copies from Clerk

☐ Plaintiff delivers service package to U.S. Marshal's Office (Southern District of California, 333 West Broadway, Suite 1100, San Diego, CA 92101)

☐ U.S. Marshal effects service on all Defendants

Plaintiff is prepared to proceed under either Option A or Option B at the Court's direction.

**STEP 4: Proof of Service (Upon Completion)**

☐ U.S. Marshal completes USM-285 forms documenting service

☐ U.S. Marshal returns executed USM-285 forms to Clerk

☐ Proof of service filed pursuant to FRCP 4(l)

☐ Defendants' 21-day response period begins (FRCP 12(a)(1)(A)(i))

**E. USM-285 SERVICE INSTRUCTIONS SUMMARY**

The following special instructions are included on each USM-285 form:

| Defendant | Address for Service | USM-285 Special Instructions |
|---|---|---|
| David S. Schulman, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 | Personal service on individual Defendant |

| Defendant | Address for Service | USM-285 Special Instructions |
|---|---|---|
| Moore, Schulman & Moore, APC | 12220 El Camino Real, Suite 300, San Diego, CA 92130 | Serve David S. Schulman as registered Agent for Service of Process |
| Sara Bear, Esq. | 12220 El Camino Real, Suite 300, San Diego, CA 92130 | Personal service on individual Defendant |
| Matthew Cord, Esq. | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 | Personal service on individual Defendant |
| Andrew P. Johnson, APC | 440 S. Melrose Drive, Suite 260, Vista, CA 92081 | Serve Andrew P. Johnson as registered Agent for Service of Process |
| Catie Young, Esq. | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 | Personal service on individual Defendant |
| Griffith, Young & Lass | 1525 Faraday Avenue, Suite 140, Carlsbad, CA 92008 | Serve John N. Griffith as registered Agent for Service of Process |
| Andrea Schuck | 3557 Monroe St., Carlsbad, CA 92008 | Personal service on individual Defendant at residence |
| Jesse Olague, Psy.D. | 12625 High Bluff Drive, Suite 204, San Diego, CA 92130 | Personal service on individual Defendant |
| San Diego Kids First | 3110 Camino Del Rio South, Suite 203, San Diego, CA 92108 | Serve Ben-Thomas Hamilton as registered Agent for Service of Process |

**Note:** San Diego Kids First's registered Agent for Service of Process (Ben-Thomas Hamilton) is located at a different address than the corporation's principal place of business. The Agent address at 3110 Camino Del Rio South, Suite 203, San Diego, CA 92108 is the correct address for service.

## F. DECLARATION

I, Robert Emert, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. The email addresses, physical addresses, and registered agent information set forth herein are accurate to the best of my knowledge based on publicly available records from the California Secretary of State and the State Bar of California.

Executed at Escondido, California on 12/22/25

/s/ Robert Anthony Emert

Plaintiff, In Pro Per

2351 Vista Lago Terrace

Escondido, CA 92029

Telephone: (760) 612-9328

Email: robemert@msn.com

---

## EXHIBIT LIST

The following exhibits are attached hereto and incorporated by reference:

**Exhibits Attached to First Amended Complaint**

| Exhibit | Description |
| --- | --- |
| **Ex. B** | Defendant Schulman's statement to federal court: "Commissioner Ratekin based this recommendation on the Psychologist report" (Case No. 23-cv-0417-JLS-NLS, Doc. 22) |
| **Ex. B-1** | Register of Actions — no psychological evaluation ordered |
| **Ex. B-2** | Register of Actions — no psychologist appointed, no report filed |
| **Ex. F (excerpt)** | Transcript, February 4, 2021 (00:04:20–00:05:10) — "24-hour school… boarding school type of situation" |
| **Ex. F-1 (excerpt)** | Transcript, October 4, 2021 — "FACILITY" (00:01:46) + "I'VE MUTED YOU" (00:04:30) |
| **Ex. G-2 (excerpt)** | Reporter's Transcript, May 11, 2021 (RT 149–150) — "I'M CERTAINLY WITH MR. SCHULMAN" / "ME, TOO" |
| **Ex. A-1 (excerpt)** | DAI Luis Peña recorded statements — key quotes re: "lined up," "pissed them off," "meat and potatoes" |

**Exhibits Incorporated by Reference from Original Complaint (ECF Doc. 1)**

All exhibits attached to the Original Complaint filed December 18, 2025 (ECF Doc. 1) are incorporated by reference as if fully set forth herein, including but not limited to:

| Exhibit | Description |
|---------|-------------|
| **Ex. A, A-1, A-2** | DAI Luis Peña transcript and recordings (294 pages) |
| **Ex. C, C-1** | Settlement Offer #1 refused (May 10, 2021) |
| **Ex. D, D-1** | Settlement Offer #2 refused (October 1, 2021) |
| **Ex. DD** | DDA Dawn Balerio interview with B.E. — "very intelligent," "articulate," "sociable" |
| **Ex. G-1** | Reporter's Transcript — Fleming testimony re: Cord's failure to contact IEP team |
| **Ex. H, H-1** | Defendant Bear's characterization of STEMI as "alleged" heart attack |
| **Ex. I, I-1** | Peremptory challenge filing and improper denial |
| **Ex. J series** | Medical records — STEMI heart attack (September 29, 2021) |
| **Ex. K series** | B.E.'s police report and TRO against Minor's Counsel Cord |
| **Ex. L, L-1, L-2** | Default judgment while Plaintiff hospitalized |
| **Ex. M series** | Income imputation ($96,000/year to SNAP recipient) |
| **Ex. N, N-1, N-2** | Three FCS reports unanimously recommending 50/50 custody |
| **Ex. O, O-1** | IEP team documentation — no facility recommendation |
| **Ex. O-2** | Treating psychologist — B.E. "doing fine" |
| **Ex. P** | Witness list provided to Minor's Counsel Cord (none contacted) |
| **Ex. S series** | Olague confidentiality violations and Fidelman declaration |
| **Ex. T** | Schulman's threat to San Diego Regional Center |
| **Ex. W** | B.E.'s return to Plaintiff at age 18 (May 2024) |
| **Ex. X** | Plaintiff's September 16, 2021 email to Schuck warning of harm |

| Exhibit | Description |
|---------|-------------|
| **Ex. Y** | Supervised visitation order based on fraud-exposing affidavit |

Plaintiff reserves the right to supplement this exhibit list through discovery and to introduce additional exhibits at any evidentiary hearing consistent with the Federal Rules of Civil Procedure and Evidence.