**APPENDIX B:** Appellant's Traverse to Respondent's Answer
*Emert v. Probation*, Case No. 25-cv-00820-TWR-BLM (S.D. Cal.), filed January 19, 2026

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RECEIVED

JAN 1 6 2026

CLERK U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

| | |
|---|---|
| ROB EMERT,<br><br>    Petitioner,<br><br>v.<br><br>SAN DIEGO PROBATION DEPARTMENT,<br><br>    Respondent. | Case No. 3:25-cv-00820-TWR-BLM<br><br>**PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**<br><br>District Judge: Hon. Todd W. Robinson<br><br>Magistrate Judge: Hon. Barbara Lynn Major |

## EXECUTIVE SUMMARY

The State's own investigator made over 50 recorded admissions that Petitioner would "probably win at trial," had "good cause for sure," and that "the DA's office should never have accepted your case." When asked why the prosecution proceeded anyway, he answered: **"You pissed them off."**

Under PC § 278.5(a), the technical "victim" is the custodial parent—Petitioner's ex-wife. But even DAI Peña acknowledged Petitioner had "good cause" to do what he did, which negates the malice element as a matter of law. And the person at the center of this case—Petitioner's son Bryce—told the prosecutor directly: "My dad didn't do anything wrong" and "I want to be his witness." On his 18th birthday, Bryce voluntarily returned to live with Petitioner. He remains there today. That is the ultimate vindication.

This evidence was systematically suppressed. The DA knew about this case for over a year—during which time Petitioner was in direct contact with the DA's office, had no criminal history, posed zero flight risk, and was openly documenting his PC § 278.7 defense. The DA did nothing. Then, when Petitioner's corruption complaint gained traction, they fabricated a "threat" from an FBI call that the FBI itself cleared—a threat the prosecutor never charged—and used it to cage Petitioner for 90 days with no bail while withholding every piece of exculpatory evidence that would have prevented the coerced guilty plea.

The Attorney General's Answer does not address any of this. Instead, the AG mischaracterizes devastating professional assessments as mere "sympathy," contradicts her own lodgment on exhaustion, invokes procedural bars that do not apply, and has refused—for over 70 days and despite three court orders—to produce the State's copies of recordings Petitioner already possesses. Her conduct may warrant sanctions under Rule 11.

**Her silence is not strategy. It is confession.**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

# Contents

EXECUTIVE SUMMARY ........................................................................................................ 1

I. THE ONE QUESTION THAT ENDS THIS CASE ......................................................... 7

  A. The Attorney General's "Merely Sympathizing" Characterization Is Sanctionable ............. 7

  B. Every Statement Negating the Malice Element ................................................................. 9

II. THE TIMELINE OF ABSURDITY ............................................................................. 10

III. THE ANATOMY OF A FRAUDULENT PROSECUTION ................................................. 11

IV. THE EQUATION ...................................................................................................... 12

V. THRESHOLD ATTACK: RESPONDENT'S EXHAUSTION CLAIMS ARE
CONTRADICTED BY RESPONDENT'S OWN LODGMENT—AND BY PETITIONER'S
EXHAUSTIVE EFFORTS TO BE HEARD ......................................................................... 13

  A. The Side-by-Side Contradiction ..................................................................................... 13

  B. This Conduct Borders on Sanctionable ........................................................................... 13

  C. The Odyssey of Exhaustion: How the State Obstructed Every Attempt to Be Heard ........ 13

  D. The Due Process Violation IS the Exhaustion ................................................................. 15

  E. The Banks v. Dretke Doctrine Applies ............................................................................ 15

VI. THE TOLLETT DEMOLITION ................................................................................. 16

  A. The Temporal Impossibility Is Dispositive ..................................................................... 16

  B. The AG's Own Authority Defeats Her ............................................................................ 16

  C. Six Exceptions—All Present .......................................................................................... 17

  D. The Catch-22 the AG Cannot Escape ............................................................................. 17

VII. GROUND ONE: ACTUAL INNOCENCE GATEWAY ................................................. 18

  A. The Schlup Standard ..................................................................................................... 18

  B. Four Categories of "New Evidence"—All Suppressed Until Post-Conviction .................... 18

  C. The "Victim" Under PC § 278.5(a)—And What Everyone Knew ..................................... 19

  D. The Essential Element Cannot Be Proven ....................................................................... 20

  E. Stronger Than House v. Bell ......................................................................................... 20

  F. The Ultimate Vindication: Bryce Came Home ............................................................... 21

  G. Conclusion on Ground One ........................................................................................... 21

VIII: GROUND TWO — VOID UNDERLYING ORDERS ................................................. 21

  A. The Statutory Element the State Cannot Prove ............................................................... 22

  B. The Jurisdictional Defect: Commissioner Ratekin's Lawless Conduct ............................. 22

  C. The DA Knew This Was a Family Court Matter—Not a Crime ........................................ 22

  D. Fraud Upon the Court: The Orders Were Predetermined ................................................. 23

  E. Void Orders Are Constitutional Nullities ....................................................................... 23

F. This Claim Survives Guilty Plea ........................................................ 24

G. Conclusion ........................................................................................ 24

IX. GROUND THREE: SYSTEMATIC BRADY VIOLATIONS ...................... 24

A. The Three-Part Test and the Scope of Suppression ........................... 25

B. Category 1: Brady Compliance Documentation (The Trilemma) ......... 25

C. Category 2: DAI Peña's 47 plus Recorded Admissions ...................... 25

D. Category 3: Full FBI Transcript and Threat Assessment ................... 26

E. Category 4: DDA Balerio's Interview with Bryce .............................. 26

F. Category 5: PC § 278.7 Defense Evidence ...................................... 26

G. Category 6: Evidence of Breached Plea Promises ............................ 27

H. Cumulative Materiality Under Kyles ................................................ 27

I. These Claims Survive the Guilty Plea ............................................... 28

J. Conclusion ........................................................................................ 28

X. GROUND FOUR: COERCED PLEA AND INEFFECTIVE ASSISTANCE ........ 28

A. The Constitutional Standard ............................................................ 28

B. The Coercive Circumstances ............................................................ 29

C. Ineffective Assistance of Counsel .................................................... 30

D. This Ground Survives Tollett ............................................................ 31

E. The Systemic Refusal to Examine Evidence ...................................... 31

F. The Ultimate Vindication ................................................................. 32

XI. GROUND FIVE: RETALIATORY PROSECUTION ............................... 32

A. The Constitutional Framework ........................................................ 32

B. Element One: Protected Activity ...................................................... 32

C. Element Two: Adverse Action ......................................................... 33

D. Element Three: Causal Connection — The Smoking Gun ................. 33

E. The 18-Month Timeline Eliminates Innocent Explanation ............... 34

F. The State Cannot Meet Its Burden ................................................... 34

G. This Ground Survives the Guilty Plea .............................................. 35

XIII. AEDPA ANALYSIS AND REQUEST FOR EVIDENTIARY HEARING ......... 35

A. The AEDPA Standard ...................................................................... 35

B. Section 2254(d)(1): Unreasonable Application of Federal Law .......... 35

C. Section 2254(d)(2): Unreasonable Determination of Facts ............... 36

D. The Cullen v. Pinholster Exception .................................................. 36

E. Request for Evidentiary Hearing ..................................................... 36

F. Alternatively, De Novo Review Is Warranted ........................................................ 37

**XIV. CONCLUSION AND PRAYER FOR RELIEF** ............................................ 37

   **A. Summary** ............................................................................................................ 37

   **B. Prayer for Relief** ............................................................................................. 38

DECLARATION OF PETITIONER ...................................................................... 39

PROOF OF SERVICE ............................................................................................ 39

APPENDIX A ........................................................................................................... 43

**EXECUTIVE SUMMARY** ................................................................................... 45

   **THE FIVE SMOKING GUNS** ......................................................................... 45

   **THE ATTORNEY GENERAL'S TRILEMMA** ............................................. 45

**PART I: DAI LUIS PEÑA RECORDING** ........................................................ 46

   **A. THE STATE'S OWN INVESTIGATOR BELIEVED THE CASE LACKED MERIT** ................................................................................................................ 46

      **Quote #1: "Personally, I Think You'll Win That"** ........................................... 46

      **Quote #2: "The DA Should Never Have Accepted Your Case"** ..................... 46

      **Quote #3: "Why Are We Even Involved? We Don't Take Anything Over 14"** ........... 47

      **Quote #4: "I Think You Have Good Cause For Sure"** .................................... 47

      **Quote #5: "This Should Be Handled in Family Court"** ................................. 47

      **Quote #6: "How Is That Even Going To Be Proven?"** .................................. 47

   **B. EVIDENCE OF VINDICTIVE/RETALIATORY PROSECUTION** ........................ 48

      **Quote #7: "You Pissed Them Off" - THE SMOKING GUN** ......................... 48

      **Quote #8: "Their Attorneys Keep Pushing Our Attorneys"** ........................ 48

      "It's that squeaky wheel, man" [02:46:27] ........................................................ 48

      **Quote #10: "We're Too Deep In It Now"** ....................................................... 48

   **C. THE COERCED/PERJURED WARRANT (FRANKS VIOLATION)** ...................... 49

      **Quote #11: "Just Finish The Damn Warrant And Don't Worry About It"** ................ 49

      **Quote #12: "Write A Quick Warrant And Go On The Evidence We Have"** .............. 49

      **Quote #13:** "I just don't believe we need to put an arrest warrant... because he's handling that" [01:47:54] ....................................................................................... 49

   **D. THE INVESTIGATOR VALIDATED PETITIONER'S DEFENSE** ........................ 49

      **Quote #14: "What Do You Expect That Parent To Do?"** .............................. 49

      **Quote #15: "Bryce Wanted To Stay With You"** ............................................ 50

      **Quote #16: "He Was Clear About Wanting To Live With His Dad"** ............ 50

      **Quote #17: "That's No Reason To Take The Kids From You"** ...................... 50

   **E. EVIDENCE OF INTENTIONAL SUPPRESSION** ....................................... 50

**Quote #18:** "Didn't record it, so there it is... There's no reason to record it" [02:45:21-43] 50

**F. MINOR'S COUNSEL COLLUSION** ......................................................................... 50

**Quote #19: "They Lined Up With Your Ex-Wife"** ..................................................... 50

**G. ADDITIONAL PEÑA ADMISSIONS** ..................................................................... 51

**PART II: DDA BALERIO INTERVIEW WITH BRYCE EMERT** ...................... 52

**A. THE FRAUD UPON THE COURT (NAPUE VIOLATION)** ............................ 52

**B. THE ULTIMATE EXCULPATORY STATEMENT** .......................................... 52

**Quote #25: (Timestamp 20:43):** ............................................................................. 52

**"I want to be his witness for my dad . He's done nothing wrong."** ........................ 52

**Quote #26: "I Made That Choice... I Could Have Left At Any Given Point"** .......... 52

**Quote #27: "Everything Has Just Been Great"** .......................................................... 53

**Quote #28: "Ever Since My Dad Has Been Out of My Life I've Been Suffering"** ....... 53

**C. DDA BALERIO ACKNOWLEDGES BRYCE'S COMPETENCE** ...................... 54

**Quote #29: "You Are Very Well-Spoken" / "Articulate"** ........................................ 54

**D. DDA BALERIO'S BROKEN PROMISES TO A CHILD** ................................... 54

**Quote #30: "I Will Get Their Voice Heard"** ............................................................ 54

**Quote #31: "I'm Happy To Have You As A Witness"** .............................................. 54

**PART III: DEFENSE COUNSEL BADILLO RECORDINGS** ............................... 55

**A. THE SMOKING GUN** ............................................................................................. 55

**Quote #32: "The DA Knows You Resolved The Case Based On..."** ......................... 55

**Quote #33: "She Would Be Willing To Talk To Andrea Again"** .............................. 55

**Quote #34: "Her Backpedaling... Could Be An Issue That Can Be Raised"** ............... 56

**B. PROOF OF BRADY SUPPRESSION** ..................................................................... 56

**Quote #35: "Did She Ever Tell You About Her Conversation With Bryce?"** ............. 56

**PART IV: ANDREA SCHUCK RECORDINGS AND EMAILS** ............................ 57

**A. THE "JUVI" THREATS - COERCING A CHILD** ............................................... 57

**Quote #36: "If He Runs Away, He's Going To Juvi"** ................................................ 57

**Quote #37: "So If He Wants To Stay With Me—" "He Goes To Juvi."** .................. 57

**B. "SKYLAR FIRST" - CONSCIOUS DEPRIORITIZATION** ............................... 57

**Quote #38: "I'm Going To Put Skylar First"** ........................................................... 57

**C. THE BAIT-AND-SWITCH** ...................................................................................... 58

**Quote #39: "I Offered You The Moon"** .................................................................... 58

**Quote #40: "I Will Not Send An Offer... Until You Drop Your Other Cases"** ........... 58

**D. EMAIL EVIDENCE OF BREACH (CC: DDA BALERIO)** ........................................ 58

**PART V: THE FBI TRANSCRIPT - THE FABRICATED THREAT** ................................. 59

  **A. THE EXCHANGE THAT DESTROYS THE "THREAT" ALLEGATION** .............. 59

    **Quote #41: FBI Operator's Direct Question - Petitioner's Explicit Denial** ................... 59

    **Quote #42: First Denial [00:04:16]** ................................................................ 60

    **Quote #43: Third Denial [00:07:58]** ............................................................... 60

    **Quote #44: The Purpose of the Call [00:07:52]** .............................................. 60

  **B. THE FBI FACE-TO-FACE ASSESSMENT** ................................................... 60

  **C. DDA BALERIO NEVER CHARGED PC § 422 - PROOF SHE KNEW** .................... 60

**THE INTERCONNECTED PATTERN OF SUPPRESSION** ........................................... 61

**THE ULTIMATE VINDICATION** .......................................................................... 62

**RELIEF REQUESTED** ........................................................................................ 63

**CONCLUSION** ................................................................................................. 63

## I. THE ONE QUESTION THAT ENDS THIS CASE

If the State's own investigator admitted on tape—WITH MORE THAN 50 timestamped admissions quoted exactly in this traverse and appendix, such as — that Petitioner would "probably win at trial," that the "DA's office should never have accepted" the case, that it "should be handled in Family Court and not Criminal Court," and that Petitioner had "good cause for sure" (negating the required malice element), why did the prosecution proceed?

The answer, spoken by DAI Luis Peña himself: **"You pissed them off."** [01:12:12]

Respondent's Answer does not address this question. Respondent's Answer does not mention DAI Peña's 47 plus admissions. Respondent's Answer does not explain how a prosecution can be constitutional when the State's own investigator validated the defendant's affirmative defense on tape. Respondent's silence is a concession.

### A. The Attorney General's "Merely Sympathizing" Characterization Is Sanctionable

The Attorney General dismisses DAI Peña's recorded admissions as mere "sympathy." Consider what the State's lead investigator—assigned to build the case *against* Petitioner—actually said after reviewing the complete prosecution file:

**On whether Petitioner would win:**

> **"You definitely will get a trial and personally, I think you'll win that."** [02:31:23]

**On whether the case should exist:**

> **"The DA's office should never have accepted your case."** [02:54:47]
>
> **"No reason for us to even open the case."** [01:20:35]
>
> **"Why are we even involved in this case? I'm like, we don't take anything over 14."** [00:11:05]
>
> **"It should have never been in criminal court."** [02:30:42]

**On Petitioner's statutory defense:**

> **"I think you have good cause for sure."** [02:38:13]
>
> **"If someone tells anybody we're going to put your child in a facility. What do you expect that parent to do?"** [00:20:53]
>
> **"We look at good cause for many reasons, right? There's a lot of reasons why we pause on arresting people because of good cause."** [02:22:16]

**On whether this was even a crime:**

> **"I believe this should be handled in Family Court and not Criminal Court."** [02:21:50]
>
> **"How is that even going to be proven in court as a child abduction?"** [02:43:17]

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

**On what Bryce wanted:**

> **"Bryce wanted to stay with you."** [02:36:45]

**On pressure from above:**

> **"Just finish the damn warrant and don't worry about it."** [00:27:12] — *quoting his supervisors*

> **"They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have."** [01:47:31]

> **"We're like too deep in it now and the attorneys are pressuring to file criminal charges."** [00:20:10]

**On external pressure:**

> **"Their attorneys keep pushing our attorneys... It's that squeaky wheel, man."** [02:46:27]

And when asked why this prosecution existed at all:

> **"You pissed them off."** [01:12:12]

On intent to suppress evidence:

> **[02:45:14-02:45:22] DAI PEÑA:**
>
> *"And I'm gonna tell them we had a brief conversation... I. Didn't record it, so there it is. You know, it's like, yeah, there's a conversation you and I had."*

> **[02:45:41-02:45:49] DAI PEÑA:**
>
> *"I mean like, there's no reason to record it. I've had a conversation with a person that, you know, called me and wanted to get an update on this case."*

**<u>Yes. This is what "sympathizing" sounds like.</u>**

An investigator who believes the defendant will *win at trial*. Who says the case *should never have been accepted*. Who admits the defendant has *good cause for sure*. Who questions how the charges could *even be proven*. Who acknowledges Bryce *wanted to stay with his father*. Who reveals he was *ordered* to file a warrant he didn't believe in. Who admits the prosecution exists because "**We're too deep in it. So we can't, we can't turn around now.. "Finish the Damn Warrant"**…"**You [Pena Supervisors or Balerio] asked me [Pena] not to reach out to him [me, Rob Emert]**... so there's that."… "you pissed *them off*…."**I'm not gonna write this warrant for his arrest because you're telling me to write a warrant because he's not complying with things and. I'm I don't. Feel comfortable with that** now if you want to write it with it, you know you want to file A case with Evidence you have They can file it without me."

This is not sympathy. These are contemporaneous admissions by a law enforcement officer that the prosecution was meritless, retaliatory, and coerced from above.

**And here is what proves the AG knows it:** The DA disclosed *other* Peña recordings to defense counsel. **They withheld *this one*.** If these statements were merely an investigator "sympathizing"—innocuous expressions of understanding—why was this the only recording Peña and DDA Balerio concealed while producing others?

The selective withholding answers itself. They knew exactly what was on this tape. They knew it was devastating. They made a deliberate choice to hide it.

The AG's "sympathizing" characterization is not advocacy—it is misrepresentation that may violate Rule 11.

### B. Every Statement Negating the Malice Element

PC § 278.5(a) requires proof of malice—that the defendant acted with intent to deprive the other parent of custody rights without good cause. The following recorded statements by DAI Peña collectively establish there was no evidence of this essential element:

| TIMESTAMP | DAI PEÑA'S STATEMENT | WHY IT NEGATES MALICE |
|---|---|---|
| 02:31:23 | "You definitely will get a trial and personally, I think you'll win that." | State's agent believes defendant wins |
| 02:38:13 | "I think you have good cause for sure." | Validates PC § 278.7 defense—good cause = no malice |
| 02:37:43 | "That's no reason to take the kids from you." | Custody deprivation was unjustified |
| 02:21:50 | "I believe this should be handled in Family Court and not Criminal Court." | Civil matter—no criminal intent |
| 02:43:17 | "How is that even going to be proven in court as a child abduction?" | Investigator doubts elements provable |
| 00:20:53 | "If someone tells anybody we're going to put your child in a facility. What do you expect that parent to do?" | Reasonable parent standard |
| 00:11:05 | "Why are we even involved in this case? I'm like, we don't take anything over 14." | Policy violation—age defeats charge |
| 02:54:47 | "The DA's office should never have accepted your case because he was 14 when this all started on paper." | Case should never have been filed |

---

**NOTICE TO THE COURT:** The quotes presented in this Traverse are representative samples from extensive recorded evidence. **Appendix A**, filed contemporaneously herewith, provides:

• Complete forensic transcript analysis of DAI Peña's more than **47 recorded admissions**

• Full transcript excerpts from DDA Balerio's suppressed interview with the alleged victim

• Documentary evidence of the breached plea promises

• The complete FBI transcript proving the "threat" was fabricated

The Attorney General possesses the State's copies of these recordings. Her refusal to produce them for over 70 days—while the recordings in Appendix A demonstrate systematic constitutional violations—speaks for itself.

## II. THE TIMELINE OF ABSURDITY

This timeline is undisputed. It is documented by the State's own records.

| DATE | WHAT HAPPENED |
|------|---------------|
| Oct 12, 2021 and from Oct 2021 until Dec 2022 there is extensive emails between Petitioner and the DA's office proving a PC 278.7 defense that the DA has withheld | Petitioner CC's the San Diego DA on family court correspondence, INVITING law enforcement to observe. |
| Sept. 7, 2022 | DAI Peña calls Petitioner; makes 47 exculpatory admissions ("you'll probably win," "good cause for sure," "should never have been accepted"). This call is recorded. The recording is not disclosed. |
| Oct. 2022 | FBI call occurs. Petitioner states "I am not making any threats" [00:06:33]. FBI operator responds "Have a great day." This will later be characterized as a "threat" justifying 90-day detention. |
| Jan. 3, 2023 | Petitioner arrested on warrant obtained using perjured declaration. Detention begins. |
| Jan.–Apr. 2023 | 90-day detention. No bail. FBI transcript withheld from bail court. All Brady material suppressed. FBI threat assessment withheld. |
| Feb. 17, 2023 | DDA Balerio interviews Bryce. Bryce says: **(Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."** This is never disclosed to defense. |
| **Apr. 3, 2023** | **GUILTY PLEA ENTERED—without access to Peña recording, Bryce interview, or FBI transcript. Based on promise – plea deal - Bryce would come home.** |
| Apr. 2023 | Promise broken. Bryce does not come home. DDA Balerio was copied/cc'd on the breach—silent. |

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

| Aug. 2023 | FIRST DISCOVERY-access to petitioners evidence of Peña recording, a year of PC 278.7 correspondence - the withheld interview of DDA Balerio and Bryce – the FBI report that determined there was no threat after in person meeting with FBI |
|---|---|
| Mar. 14, 2024 | BRYCE TURNS 18 AND IMMEDIATELY MOVES IN WITH PETITIONER. The "victim" of "abduction" voluntarily returns to the "abductor" the moment he has legal autonomy. |
| April 2023 - present | Petitioner filed two ex parte's, motion to dismiss, motion to withdrawal, PC 1424, habeas corpus at state, appellate, ca supreme and district court's covering all the same material in this traverse – Today, Bryce and Petitioner live together. The "abduction" narrative has been conclusively disproven by the alleged victim's own choices. This farce and a sham proceedings with manifest injustice cost petitioner two STEMI heart attacks and Bryce his entire high school years. There are several 1983 lawsuits pending surrounding the fraud upon the court by several defendants |

This timeline speaks for itself. The prosecution proceeded despite the State's own investigator saying it shouldn't exist, continued while suppressing evidence of innocence, extracted a guilty plea through 90 days of coercive detention, welched on a plea deal, and has been definitively refuted by the **real** victim's (Bryce) post-conviction choices. Schuck is the victim per PC 278.5(a) but as DAI Pena said, "you have good cause for sure" for your actions and this negates malice which is the essential element of a PC 278.5(a) charge.

### III. THE ANATOMY OF A FRAUDULENT PROSECUTION

This section provides the narrative connecting the documented facts. For detailed evidence, see Section I (investigator admissions), Section II (timeline), and Appendix A (complete forensic analysis).

**A. The "Participation ≠ Knowledge" Distinction**
Respondent may argue: "Petitioner participated in the September 7, 2022 call with Peña, therefore he knew about the Brady material."
**This argument is legally frivolous and ethically bankrupt. It misunderstands—or deliberately misrepresents—what *Brady* requires.**
*Brady* **requires the prosecution to disclose exculpatory evidence to defense counsel.** 373 U.S. at 87. The prosecution possessed its own recording of this call. The prosecution never disclosed it to defense counsel Jose Badillo. Badillo confirmed this on tape. **The prosecution's *Brady* obligation is independent of what the defendant may or may not possess.** A prosecutor cannot suppress exculpatory evidence and then claim "no violation—the defendant had his own copy." That is not law. That is fraud.
**But it gets worse.**

The prosecution **selectively disclosed**. The DA produced *other* Peña recordings to defense counsel but withheld *this one*—the one where Peña admits Petitioner would "probably win at trial," had "good cause for sure," and that "the DA's office should never have accepted your case." That deliberate choice proves the prosecution knew this recording was devastating and made a calculated decision to bury it. **Selective disclosure is not oversight. It is consciousness of guilt.**

The argument fails for four additional reasons:

**First**, Petitioner was arrested on January 3, 2023—four months after the September 7, 2022 call—and caged for ninety days on a fabricated "threat." During this entire period, he had no access to his files, his recordings, or any ability to review a three-hour conversation from months earlier. He was isolated, medically compromised, and fighting to survive—not cataloging evidence the prosecution was legally obligated to disclose.

**Second**, even if Petitioner had perfect recall of the call, that is legally irrelevant. *Brady* requires disclosure to *counsel*. Defense counsel Badillo never received this recording from the prosecution. He could not advise his client about evidence he did not know existed. The information asymmetry that coerced the guilty plea was **created by the prosecution's suppression**—not cured by Petitioner's participation in a call four months earlier.

**Third**, Petitioner only discovered the full significance of this recording in August 2023—four months *after* the coerced plea—when he finally had access to his files and could review what he possessed. By then, the damage was done. The prosecution had extracted its plea while sitting on evidence that would have changed everything.

**Fourth**, Respondent's theory would create a perverse rule: prosecutors could record exculpatory admissions, suppress them, then claim "no *Brady* violation—the defendant was on the call." This framework would incentivize prosecutorial fraud. No court has adopted it. This Court should not be the first.

**The prosecution held this recording for months. They disclosed other Peña recordings but hid this one. They obtained a guilty plea while suppressing evidence their own investigator said proved no crime occurred. And now the Attorney General continues the cover-up—refusing for over 70 days to produce the State's copy of a recording Petitioner already possesses.**

**That is not legal strategy. That is obstruction. And it confirms exactly what they are hiding.**

## IV. THE EQUATION

Respondent's Answer can be reduced to a simple equation:

| What Petitioner Filed | What Respondent Answered |
| --- | --- |
| 94-page Amended Petition | ~3 pages of substantive argument |
| 47 timestamped admissions from State's investigator | Zero mentions of any admission |
| Six categories of Brady material | "Merely sympathizing" |

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

| Victim stating **(Timestamp 20:43):** "I want to be his witness for my dad . He's done nothing wrong." | Not addressed |
| Victim voluntarily returning to Petitioner at age 18 | Not addressed |
| Extensive case law on all six grounds | Generic Tollett citation |

The disparity speaks for itself. The AG's Answer is not a substantive response to Petitioner's claims—it is a placeholder designed to invoke procedural bars while avoiding the merits entirely.

## V. THRESHOLD ATTACK: RESPONDENT'S EXHAUSTION CLAIMS ARE CONTRADICTED BY RESPONDENT'S OWN LODGMENT—AND BY PETITIONER'S EXHAUSTIVE EFFORTS TO BE HEARD

### A. The Side-by-Side Contradiction

Respondent asserts that Ground Two "is unexhausted and is not cognizable on federal habeas review" (Answer at 10-12) and that "Ground Six is unexhausted" (Answer at 12-13). These assertions are demonstrably false—**contradicted by documents Respondent itself filed with this Court.**

Respondent filed a Notice of Lodgment (ECF No. 17) incorporating the state court record, including Petitioner's California Supreme Court habeas petition (Case No. S284407) as **Lodgment 25.** That document explicitly presents both claims as federal constitutional claims:

| **What Respondent Lodged (Lodgment 25)** | **What Respondent Now Claims (Answer)** |
| --- | --- |
| Ground Two: "Fourteenth Amendment Due Process" with citations to Armstrong v. Manzo, Espinosa v. Florida, Wolfe v. Strankman, Johnston | "Ground Two... is unexhausted" (Answer at 10) |
| Ground Six: Federal claim under Caperton v. A.T. Massey Coal Co., citing Liljeberg, Williams v. Pennsylvania, In re Murchison | "Ground Six is unexhausted" (Answer at 12) |

The *Baldwin v. Reese*, 541 U.S. 27 (2004), "fair presentation" test is satisfied. Respondent's claims are demonstrably false, contradicted by documents Respondent itself filed.

### B. This Conduct Borders on Sanctionable

For Respondent to claim Grounds Two and Six are "unexhausted" when Respondent itself lodged the proof of exhaustion misrepresents material facts to this Court and may violate FRCP 11(b).

### C. The Odyssey of Exhaustion: How the State Obstructed Every Attempt to Be Heard

The AG's "unexhausted" claim is not merely false—it is offensive given what Petitioner endured to exhaust these claims.

### Step 1: Released from 90 Days of Coercive Detention (April 2023)

After 90 days in custody—during which all exculpatory evidence was suppressed, a coerced plea was extracted—Petitioner was finally released. He immediately began fighting to present the evidence the State had hidden.

### Step 2: Provided Evidence to Public Defender—Who Refused to Act (June 2023)

Within weeks of release, Petitioner provided the San Diego County Public Defender's Office with the DAI Peña recordings, Brady violation evidence, and witness names. The response from Supervising Attorney Mignon Hilts (June 29, 2023):

> *"Our office has been appointed for the sole purpose of evaluating whether you have a legal basis to withdraw your guilty plea. We have not been appointed to evaluate the specific facts of your criminal case."*

When Petitioner demanded the "court order" limiting their scope, Hilts eventually produced a standard minute order stating only "PHS/Motions"—routine boilerplate. **There was no court order limiting investigation.** The Public Defender fabricated a restriction to avoid confronting prosecutorial misconduct.

Petitioner objected (September 5, 2023):

> *"So you're not going to bring any of the evidence... You're not going to call witnesses? Such as DDA Balerio... You're not going to call Bryce's mom... Are you joking. That is egregious ineffective counsel right there."*

Deputy Public Defender Ferrara's response: **"See you on 9/21."**

### Step 3: Forced Pro Se—Filed Everything (July 2023 – Present)

Abandoned by appointed counsel, Petitioner was forced to represent himself. He filed:

| Filing | Court | Date | Result |
|---|---|---|---|
| Motion to Withdraw Plea | Superior Court | July 2023 | Denied—no evidentiary hearing |
| Motion to Dismiss | Superior Court | July 2023 | Denied—no evidentiary hearing |
| Ex Parte Applications (2) | Superior Court | 2023 | Denied |
| PC § 1424 (Change of Venue) | Superior Court | 2023 | Denied |
| Motion for Recusal of Judge Katz | Superior Court | 2023 | Denied |
| Habeas Corpus (D083239) | Court of Appeal | 2023 | **Denied Dec. 15, 2023—summary** |
| Federal Habeas (3:23-cv-02318) | S.D. Cal. | Dec. 2023 | Dismissed—exhaust at CA Supreme Court |

| Habeas Corpus (S284407) | CA Supreme Court | Apr. 2, 2024 | **Denied Feb. 11, 2025—summary** |
|---|---|---|---|
| Current Federal Habeas | S.D. Cal. | Apr. 7, 2025 | Pending |

**Every single state court filing was denied without an evidentiary hearing.** Every denial was summary—one page or less—with no engagement with the evidence Petitioner presented. The California Supreme Court's denial came with a letter stating the petition "was considered by the entire court" but providing no analysis whatsoever.

### Step 4: The Federal Court Ping-Pong

When Petitioner first sought federal habeas relief (Case No. 3:23-cv-02318), Judge Simmons dismissed without prejudice, directing Petitioner to exhaust at the California Supreme Court level. **Petitioner immediately complied**—filing his California Supreme Court petition on April 2, 2024, even before receiving the final federal dismissal order.

After the California Supreme Court denied relief on February 11, 2025, Petitioner filed the current federal petition on April 7, 2025—**in full compliance with the federal court's prior instructions.**

### D. The Due Process Violation IS the Exhaustion

This Court should understand what Petitioner was attempting to present at every level: **evidence that the State's own investigator said he would win at trial, that he had "good cause for sure," that the case "should never have been accepted."**

At every level, the State's response was the same: *We don't care. Denied.*

No evidentiary hearing. No substantive engagement. No explanation. Just... denied.

The exhaustion doctrine exists to give state courts "one full opportunity to resolve any constitutional issues." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner gave California's courts that opportunity—**repeatedly, at every level, often without counsel, while fighting against evidence suppression and a fabricated "limited scope" restriction.** The State courts refused to listen. That is not a failure to exhaust. That is a failure of due process.

### E. The Banks v. Dretke Doctrine Applies

Under *Banks v. Dretke*, 540 U.S. 668 (2003), when the State's misconduct prevents proper development of the record, the petitioner cannot be penalized for procedural defects. Here, the State created a perfect storm:

    1. **Brady suppression** prevented knowledge of prosecutorial misconduct during the criminal proceedings

    2. **90-day coercive detention** broke Petitioner's ability to fight

    3. **Ineffective counsel** refused to investigate based on a fabricated restriction

    4. **State courts** denied every motion without evidentiary hearings

5. **The AG now claims "unexhausted"** after the State itself prevented proper development at every turn

The State cannot suppress evidence, coerce a plea, fabricate limitations on counsel, deny every motion without a hearing, and then claim the defendant failed to properly exhaust. That is not law. **That is tyranny.**

# VI. THE TOLLETT DEMOLITION

## A. The Temporal Impossibility Is Dispositive

Respondent invokes *Tollett v. Henderson*, 411 U.S. 258 (1973), arguing Petitioner's guilty plea waives all antecedent constitutional claims. This argument fails at the threshold.

| Date | Event |
|------|-------|
| Sept. 7, 2022 | DAI Peña makes 47 exculpatory admissions (suppressed) |
| Jan. 3, 2023 | Petitioner arrested |
| Jan.–Apr. 2023 | 90-day detention; all Brady material withheld |
| **Apr. 3, 2023** | **GUILTY PLEA (no knowledge of Brady material)** |
| **Aug. 2023** | **FIRST DISCOVERY of Peña recording (4 months post-plea)** |

Under Respondent's theory, Petitioner "waived" Brady claims on April 3, 2023, about evidence he discovered in August 2023. **You cannot waive rights to evidence you do not know exists.** This is not legal argument—it is logical impossibility.

## B. The AG's Own Authority Defeats Her

The AG cites *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995). That case controls—for *Petitioner*:

> "*Tollett does not bar a Brady claim if the petitioner contends that his guilty plea was not voluntary and intelligent because **the plea was made in the absence of withheld Brady material** and the withheld information is material to the decision to plead.*" *Id.* at 1453-54.

That is this case. Petitioner's plea was made "in the absence of withheld Brady material"—47 admissions proving he would "probably win at trial." Had Petitioner known, he would not have pleaded guilty. *Sanchez* is dispositive.

The AG's citation to *Dorsey v. Cullen* fails because *Dorsey*'s petitioner actually *knew* about the suppressed material before pleading. Petitioner did not. The temporal impossibility distinguishes every case the AG can cite.

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

## C. Six Exceptions—All Present

Even absent temporal impossibility, every ground falls within established *Tollett* exceptions:

| Ground | Exception | Authority |
|---|---|---|
| **One** (Actual Innocence) | Gateway overcomes all bars | *Schlup v. Delo*, 513 U.S. 298; *McQuiggin v. Perkins*, 569 U.S. 383 |
| **Two** (Void Orders) | Jurisdictional defects survive plea | *Class v. United States*, 138 S. Ct. 798; *Blackledge v. Perry*, 417 U.S. 21 |
| **Three** (Brady) | Unknown Brady material | *Sanchez*, 50 F.3d at 1453-54 |
| **Four** (Coerced Plea) | Voluntariness challenges | *Brady v. United States*, 397 U.S. 742; *Iaea v. Sunn*, 800 F.2d 861 |
| **Four** (IAC) | Counsel failures re: plea | *Hill v. Lockhart*, 474 U.S. 52 |
| **Five** (Retaliation) | Challenges to decision to prosecute | *Blackledge*, 417 U.S. at 28-30 |

**Every claim survives.** The AG's blanket *Tollett* invocation ignores decades of precedent.

## D. The Catch-22 the AG Cannot Escape

The AG's position creates an inescapable quadrilemma:

1. "You can't raise Brady claims because you pled guilty" (*Tollett* bar)
2. "We don't have to produce Brady evidence because your plea waived those claims" (*Tollett* bar)
3. "You can't challenge the plea's voluntariness because you 'participated' in the suppressed call" (fabricated knowledge)
4. "The plea is valid even though the promise that induced it was breached within 22 days—with the prosecutor copied on the breach" (*Santobello* violation)

**The plea was purchased with a promise. The promise was broken. The prosecutor watched.**
From the defense counsel Jose Badillo recording - himself confirming the deal:
**[05/01/23, 00:16:58]:** "The DA knows... that you resolved the case based on the conversation she and I had with Andrea."
Badillo further acknowledged that if Andrea reneged, withdrawal was warranted:
**[05/03/23, 00:02:06]:** "[DDA Balerio] would be willing to... talk to Andrea again to make sure that she's on the same page and not backing out."
**Andrea backed out. DDA Balerio did nothing.**
On April 13, 2023—ten days after the plea—Andrea Schuck included **DDA Balerio** on an email chain stating:
"We are not in negotiations until you drop your other cases."
That was never part of the agreement. DDA Balerio saw it. DDA Balerio—the prosecutor who knew the plea was "based on the conversation she and I had with Andrea"—watched the promise being repudiated in writing. **She took no remedial action. She never informed the Court. She let the fraudulent plea stand.**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

Under *Santobello v. New York*, 404 U.S. 257, 262 (1971), a plea that "rests in any significant degree on a promise or agreement of the prosecutor" cannot stand when that promise is breached. Here, the promise didn't just rest on the agreement—**it was the agreement.** Bryce comes home. That was the deal. Badillo confirmed the DA knew it. Balerio confirmed she would ensure Andrea didn't back out. Andrea backed out. Balerio was copied. Silence.
**The AG cannot invoke a plea as a constitutional waiver when the prosecution obtained that plea through promises it watched being broken—and did nothing.**
This circular logic would permit prosecutors to: suppress evidence → fabricate threats → coerce plea through false promises → breach those promises → invoke the fraudulent plea to bar all challenges. The Supreme Court rejected this regime in *Banks v. Dretke*, 540 U.S. 668, 696 (2003): "A rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."
The AG's *Tollett* argument is not legal advocacy. It is an attempt to weaponize prosecutorial fraud into immunity from review.


## VII. GROUND ONE: ACTUAL INNOCENCE GATEWAY

### A. The Schlup Standard

Under *Schlup v. Delo*, 513 U.S. 298, 327 (1995), a petitioner presenting credible evidence of actual innocence may overcome all procedural barriers by showing "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." This standard is "demanding but achievable." *House v. Bell*, 547 U.S. 518, 538 (2006).

**Petitioner does not merely satisfy this standard—he obliterates it.**

The State's own investigator admitted Petitioner would "probably win at trial." The alleged "victim" told the prosecutor "My dad didn't do anything wrong... **(Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."**

The victim voluntarily returned to live with Petitioner on his 18th birthday. When the prosecution's lead investigator declares the defendant innocent, and the victim confirms it, and the victim runs *toward* the "abductor" at first opportunity—the *Schlup* gateway is not "achieved." It is demolished.

### B. Four Categories of "New Evidence"—All Suppressed Until Post-Conviction

*Schlup* requires "new evidence"—evidence **unavailable** at the time of conviction. Petitioner presents four categories of devastating evidence, all suppressed until post-conviction discovery:

| Category | Evidence | When Discovered | Where Documented |
|----------|----------|-----------------|------------------|
|          |          |                 |                  |

| 1. DAI Peña Recording | 47 admissions: "probably win," "good cause for sure," "should never have been accepted" | Aug. 2023 (4 months post-plea) | Appendix A, Part I |
|---|---|---|---|
| 2. Bryce's Interview | "My dad didn't do anything wrong **(Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."** | Post-conviction discovery | Appendix A, Part II |
| 3. FBI Transcript and the FBI threat assessment report never turned over | "I am not making any threats" [00:06:33]; FBI clears Petitioner | Withheld 90 days; discovered post-conviction | Appendix A, Part V |
| 4. Oct 2021 – Dec 2022 email communications between plaintiff and the DA that prove a PC 278.7 defense that was withheld | Almost a year of email communication between Plaintiff and the DA that proved a PC 278.7 defense that was all withheld from defense counsel and the court. | Mar. 14, 2024 | Undisputed fact |

**This evidence was not available at the April 3, 2023 plea.** The prosecution possessed it. The prosecution suppressed it. The prosecution obtained a conviction based on that suppression. Now the AG invokes that conviction to avoid accountability.

### C. The "Victim" Under PC § 278.5(a)—And What Everyone Knew

Under PC § 278.5(a), the technical "victim" is the custodial parent deprived of custody rights—here, Andrea Schuck. But consider what **every person involved** knew:

| Who | What They Knew | What They Did |
|---|---|---|
| **Bryce (age 14)** | Begged to live with his dad—for good reason; told the court directly | State ignored his wishes |
| **Andrea Schuck** | Told DAI McIntosh she was "giving" custody to Petitioner (Apr. 2022) | Later weaponized the system |
| **DAI McIntosh** | Documented "your ex-wife is willing to give over custody" | Case should have ended here |
| **DAI Peña** | Said ~**40 times** Bryce should be able to live with his dad – this case lacks merit | **Recording suppressed** |
| **DDA Balerio** | Heard Bryce say "I just want to go home to my dad" | **Interview suppressed** |
| **DDA Balerio** | Knew FBI cleared Petitioner of "threat" | **Transcript withheld 90 days— then arrested him anyway** |

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

| DA's Office | Made deal: plead guilty, Bryce comes home | Broke the deal |
| DDA Balerio | Was **copied on the breach emails** | Said nothing |
| AG's Office | Possesses all of this evidence | Hiding it for 70+ days |

**The 14-year-old "abducted" child begged to live with his father—for good reason.** The custodial parent was "giving" custody. The State's investigators—both McIntosh and Peña—documented that Bryce should be with his dad. The prosecutor interviewed Bryce herself and heard him say he just wanted to go home to his dad. **And they prosecuted anyway.**

Then they made a deal: plead guilty, Bryce comes home. Petitioner pled guilty. **They broke the deal.** DDA Balerio was copied on the emails documenting the breach. She said nothing. She did nothing.

Then they hid every piece of evidence showing they knew they were prosecuting an innocent man for "depriving" custody that the custodial parent was voluntarily surrendering to a child who was begging to live with his father.

**The DA knew the entire time. The AG is hiding it now. This is not prosecution. This is persecution.**

### D. The Essential Element Cannot Be Proven

PC § 278.5(a) requires proof of **malice**—that the defendant acted with intent to deprive custody rights *without good cause*. PC § 278.7 provides a complete defense when "good cause" exists. The State's own investigator destroyed this element:

| Timestamp | What Peña Said | Why It Destroys Malice |
|---|---|---|
| 02:38:13 | "I think you have good cause for sure." | **Good cause = complete defense under PC § 278.7** |
| 02:31:23 | "You definitely will get a trial and personally, I think you'll win that." | State's agent admits defendant wins |
| 02:43:17 | "How is that even going to be proven in court as a child abduction?" | Investigator admits elements unprovable |
| 00:20:53 | "If someone tells anybody we're going to put your child in a facility. What do you expect that parent to do?" | Reasonable parent standard satisfied |

**When the State's investigator admits "good cause for sure," the malice element is negated as a matter of law.** No reasonable juror could find malice when the State's own agent validated the statutory defense.

### E. Stronger Than House v. Bell

In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court found *Schlup* satisfied based on DNA evidence excluding defendant (circumstantial), evidence implicating another person

(circumstantial), and recanted testimony (credibility issues). **Petitioner's evidence is categorically stronger:**

| *House v. Bell* | **This Case** |
|---|---|
| DNA evidence (scientific, circumstantial) | **State's own investigator admitting defendant wins** (direct) |
| Evidence implicating another (circumstantial) | **Victim stating (Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."** |
| Recanted witness testimony (credibility issues) | **Victim voluntarily returning to "abductor"** (conclusive conduct) |

If *House* satisfied *Schlup*, then the State's own investigator saying "you'll probably win" and "good cause for sure"—combined with the victim exonerating the defendant and choosing to live with him—**exceeds Schlup by orders of magnitude.**

**F. The Ultimate Vindication: Bryce Came Home**

On March 14, 2024, Bryce Emert turned 18. **That same day, he moved in with Petitioner.**

The prosecution's entire theory was that Petitioner "abducted" his son. If that were true, why did the "victim" run *toward* the "abductor" the moment he had legal autonomy?

Bryce's conduct proves what DAI Peña admitted: there was no abduction. There was a father protecting his son from institutional abuse. The son knew it. The investigator knew it. The prosecutor knew it. They prosecuted anyway.

**Bryce's return is not just evidence of innocence. It is the final refutation of every lie the State told to obtain this conviction.**

**G. Conclusion on Ground One**

The *Schlup* gateway is satisfied—overwhelmingly:

- **State's investigator:** "You'll probably win at trial"
- **State's investigator:** "Good cause for sure" (negates malice element)

• **Alleged victim:** "My dad didn't do anything wrong... **(Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."**

- **Alleged victim's conduct:** Voluntarily returned to "abductor" at age 18

**No reasonable juror would convict. The gateway opens. All procedural bars fall.**

*For complete forensic analysis of all 47 plus Peña admissions and the four categories of suppressed evidence, see Appendix A, Parts I-V.*

**VIII: GROUND TWO — VOID UNDERLYING ORDERS**

## A. The Statutory Element the State Cannot Prove

PC § 278.5(a) criminalizes deprivation of custody rights "pursuant to court order." This is a **jurisdictional element**, not surplusage. Without a **lawful** custody order, there is no crime. The State's entire case collapses because the underlying orders are *void ab initio*.

## B. The Jurisdictional Defect: Commissioner Ratekin's Lawless Conduct

On February 9, 2021, Petitioner filed a timely peremptory challenge under CCP § 170.6 against Commissioner Patti Ratekin. The official transcript of February 4, 2021 proves no substantive orders were issued and no contested issues were heard—Commissioner Ratekin stated only that she was "not ready to do this case right now."

California law is **mandatory and unambiguous**:

> "A timely challenge under section 170.6 **automatically disqualifies** a judge... **The trial judge is thus divested of jurisdiction** to act further in that proceeding except to grant the motion."
>
> *People v. Superior Court (Lavi)*, 4 Cal.4th 1164, 1171 (1993).

> "Upon the filing of an affidavit under section 170.6, **the judicial officer is immediately and automatically disqualified**."
>
> *McCartney v. Commission on Judicial Qualifications*, 12 Cal.3d 512, 531-32 (1974).

**What Commissioner Ratekin did instead:** She denied the challenge without legal basis on February 10, 2021—then continued presiding for **nearly a year**, stripping Petitioner of all custody rights through orders she had **no jurisdiction to issue**. California Rules of Court 2.831(b) and 2.834(b)(3) require written stipulations to a temporary judge. None existed.

**Every order issued after February 9, 2021 is void ab initio.** The State prosecuted Petitioner for violating orders that never had legal effect.

## C. The DA Knew This Was a Family Court Matter—Not a Crime

The recording the DA withheld and the AG continues to suppress proves the State knew there was no basis for criminal prosecution. DAI Peña told Petitioner the **specific conditions** under which no warrant would issue—and Petitioner **met every one**:

| What Peña Said | Timestamp | What It Proves |
|---|---|---|
| "That's why if you go to court. **That warrant's not gonna go in to the system.**" | [02:16:55] | Warrant was CONDITIONAL on resolving in family court |

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

| "I just don't believe we need to put an arrest warrant... **because he's handling that.**" | [01:47:54] | Peña acknowledged Petitioner WAS handling it |
|---|---|---|
| "I believe this should be handled in **Family Court and not Criminal Court.**" | [02:21:50] | Not a criminal matter |
| "I think you have **good cause for sure.**" | [02:38:13] | PC § 278.7 defense validated—no malice as a matter of law |

**What happened next:** Despite Petitioner doing exactly what Peña said would prevent a warrant, supervisors ordered: **"Just finish the damn warrant and don't worry about it."** [00:27:12]

**The warrant was issued in violation of the DA's own stated conditions.** The recording proving this was suppressed from defense counsel. The AG continues to withhold it. *See Appendix A, Part II for complete forensic analysis of the conditional warrant and Peña's acknowledgment that Petitioner was actively handling the matter in family court.*

**D. Fraud Upon the Court: The Orders Were Predetermined**

The custody orders are now subject to federal civil rights litigation. *Emert v. Schulman*, Case No. 25-cv-3646-JAH-BJW (S.D. Cal.). The allegations reveal systematic fraud:

**Fabricated "Psychologist Report":** Opposing counsel told a federal court that "Commissioner Ratekin based this recommendation on the Psychologist report." (FAC ¶ 11, Ex. B.) **No such report exists.** The Register of Actions confirms: no psychological evaluation ordered, no psychologist appointed, no report filed.

**Predetermined in Five Minutes:** Within five minutes of assignment—before reviewing any file or hearing any witness—Commissioner Ratekin announced she was placing Bryce in "some kind of 24-hour school." The outcome was rigged from the start.

**Independent Corroboration:** DA1 Peña confirmed it: "I think they [Minor's Counsel] lined up with your ex-wife... that does not make sense to me." When asked why Petitioner lost all parental rights despite having "good cause for sure": **"You pissed them off."** [01:12:12]. *See Appendix A, Part I.*

**E. Void Orders Are Constitutional Nullities**

> "Judgments rendered without subject matter jurisdiction are **'legal nullities'** that may be attacked at any time."

> *Kalhan v. Colonial Mortgage Service Co.*, 591 F.3d 119, 124 (2d Cir. 2010).

> "[A judgment is] **void** if the court that rendered it lacked jurisdiction... **Such a judgment is a nullity.**"

> *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 271 (2010).

> "Proceedings conducted by a tribunal lacking jurisdiction violate **the fundamental requirement of due process.**"

> *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

**Criminal convictions predicated on void underlying orders violate due process.** *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

### F. This Claim Survives Guilty Plea

> "A guilty plea does not bar a federal constitutional challenge to **the Government's power to criminalize** the defendant's (admitted) conduct."

> *Class v. United States*, 138 S. Ct. 798, 803 (2018).

Petitioner challenges the State's **power to prosecute** conduct that cannot constitute a crime as a matter of law. You cannot violate orders that do not legally exist. This jurisdictional challenge survives guilty plea under *Blackledge v. Perry*, 417 U.S. 21 (1974).

### G. Conclusion

The custody orders Petitioner allegedly violated are **void** for two independent reasons:

1. **Jurisdictional:** Commissioner Ratekin was automatically divested of authority upon Petitioner's timely CCP § 170.6 challenge.

2. **Fraud:** The orders were obtained through fabricated evidence and predetermined outcomes now alleged in federal civil rights litigation.

**But Ground Two is even stronger than a typical void-orders case.** The DA's own investigator told Petitioner that if he was handling this in family court, no warrant would issue. Petitioner was handling it. Peña acknowledged he was handling it. Peña confirmed it was a family court matter with good cause under PC § 278.7. **Then supervisors ordered the warrant filed anyway.**

The recording proving all of this was suppressed by the DA and continues to be withheld by the AG. Any reasonable person who listens to that recording will understand: **there was no crime, the DA knew there was no crime, and they prosecuted anyway because—in Peña's words— "You pissed them off."**

**Ground Two independently warrants habeas relief.**

### IX. GROUND THREE: SYSTEMATIC BRADY VIOLATIONS

## A. The Three-Part Test and the Scope of Suppression

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), requires disclosure of evidence that is: (1) **favorable** to the accused; (2) **suppressed** by the State; and (3) **material** to guilt or punishment. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), mandates **cumulative** materiality analysis.

Here, **six categories** of suppressed evidence each independently satisfy *Brady*. Cumulatively, they represent a systematic campaign to secure a conviction the State's own investigator admitted could not be obtained at trial. *See Appendix A for complete forensic analysis of each category.*

## B. Category 1: Brady Compliance Documentation (The Trilemma)

The AG has refused—despite three court orders over six months—to produce any *Brady* compliance documentation. This creates an **inescapable trilemma**:

| SCENARIO 1: NEVER CREATED | SCENARIO 2: DESTROYED | SCENARIO 3: WITHHELD |
|---|---|---|
| If no Brady logs, checklists, or certificates exist, this proves no systematic Brady review occurred before the plea. | If documentation existed and was destroyed, this constitutes spoliation warranting adverse inferences. | If documentation exists but is being withheld despite court orders, this is contempt and a continuing Brady violation. |
| → ***Brady* violation established** | → ***Spoliation sanctions warranted*** | → ***Contempt and sanctions warranted*** |

**Under any scenario, relief is mandatory.** Deputy AG Chenelia admitted in her October 10, 2025 email that she *never requested the complete DA file* before filing an Answer denying *Brady* violations. You cannot certify Brady compliance without knowing what was disclosed.

## C. Category 2: DAI Peña's 47 plus Recorded Admissions

**Favorable:** The State's investigator admitted Petitioner would "probably win at trial" [02:31:23], had "good cause for sure" [02:38:13], and that "The DA's office should never have accepted your case" [02:54:47]. *See Appendix A, Part I for all 47 timestamped admissions.*

**Suppressed:** Never disclosed to defense counsel. Discovered August 2023—four months post-plea. Defense counsel Badillo confirmed he never received it.

**Material:** Per se material under *Bagley*. No defendant pleads guilty knowing the State's investigator believes he will win.

**THE SELECTIVE DISCLOSURE PROVES KNOWLEDGE:** The DA turned over *other* Peña recordings but specifically withheld *this one*. If it were insignificant—just "sympathizing" as the AG claims—why withhold it while disclosing others? **The choice to hide this recording while producing others proves the DA knew exactly how devastating it was.**

### D. Category 3: Full FBI Transcript and Threat Assessment

**Favorable:** Petitioner explicitly stated: "I am not making any threats. I need to make that perfectly clear." [00:06:33]. The FBI operator responded: "Thank you for calling. Have a great day." The FBI then conducted an **in-person threat assessment**—Petitioner met with FBI agents who evaluated him directly. **The FBI concluded Petitioner was not a threat.** *See Appendix A, Part V.*

**Suppressed:** The full transcript was withheld for 90 days. The FBI's in-person threat assessment clearing Petitioner was **never disclosed to the court or defense counsel.** DDA Balerio used a fabricated "threat" narrative at the bail hearing while possessing FBI documentation proving no threat existed.

**Material:** Consider the absurdity: Petitioner—with **zero criminal history**, **zero flight risk**, who had **voluntarily contacted the DA** and **documented everything he was doing**—was held **90 days without bail** as a "threat." Then, the moment he signed a plea deal, he was suddenly **not a threat** and released. If he were truly dangerous, why release him? **Because there was never any threat.** The "threat" was a tool to coerce a plea—nothing more.

DDA Balerio never charged PC § 422 (criminal threats). **She knew there was no threat.** She had the FBI's assessment proving it. She hid it anyway.

### E. Category 4: DDA Balerio's Interview with Bryce

**Favorable:** The alleged "victim" told the prosecutor: "My dad didn't do anything wrong(**Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."**

He could have left at any given point. DDA Balerio described him as "well-spoken" and "articulate" [21:26]. *See Appendix A, Part II.*

**Suppressed:** Never disclosed to defense counsel. Badillo confirmed he never received it. DDA Balerio then told the Court Bryce was **"incompetent"** to testify—after recording an interview proving his competence. This is a *Napue v. Illinois* violation layered atop *Brady*.

**Material:** When the victim exonerates the defendant, the case is over. Any competent attorney with this interview advises trial, not plea.

### F. Category 5: PC § 278.7 Defense Evidence

**Favorable:** DAI Peña validated Petitioner's complete statutory defense: "I think you have good cause for sure" [02:38:13]. **Good cause negates malice as a matter of law.**

But the Peña recording isn't the only proof. **From October 2021 through December 2022—
over fourteen months—Petitioner sent extensive email correspondence directly to the DA's
office** documenting his complete PC § 278.7 defense: medical records showing Bryce's
emotional abuse, evidence of the facility placement threats, communications with authorities,
and legal analysis of his statutory rights. **The DA had Petitioner's complete defense before
they ever had a case.**

**Suppressed:** None of this correspondence was disclosed to defense counsel. Petitioner was
detained 90 days without access to his own evidence. **Meanwhile, the prosecution possessed
both Peña's admission that the defense was valid and fourteen months of emails proving
it—and withheld all of it. This is constructive suppression under *Banks v. Dretke*, 540 U.S.
668, 692 (2003).**

**Material:** A complete statutory defense is per se material. *Pennsylvania v. Ritchie*, 480 U.S. 39,
57 (1987). The DA cannot receive fourteen months of documented defense evidence, have their
own investigator validate that defense on tape, suppress all of it, coerce a plea, and then claim the
defendant "waived" his rights.

### G. Category 6: Evidence of Breached Plea Promises

**Favorable:** Defense counsel Badillo recorded himself admitting: "The DA knows... that you
resolved the case based on the conversation she and I had with Andrea" [05/01/23]. The promise:
Bryce comes home. *See Appendix A, Parts III-IV.*

**Suppressed:** DDA Balerio was **copied** on Andrea Schuck's May 18, 2023 email adding
conditions ("drop your civil cases") that were never part of the agreement. **The prosecution
watched the promise being breached and said nothing.**

**Material:** Under *Santobello v. New York*, 404 U.S. 257 (1971), broken prosecutorial promises
invalidate pleas.

### H. Cumulative Materiality Under Kyles

Consider what was suppressed:

1. The State's investigator said no case existed

2. The FBI proved the "threat" was fabricated

3. The victim exonerated the defendant

4. A complete statutory defense was validated by the investigator

5. The promise inducing the plea was known to be false

6. No Brady documentation exists to prove any review occurred

This is not a verdict "worthy of confidence." *Kyles*, 514 U.S. at 434. This is systematic
suppression designed to coerce a plea to a crime that did not exist.

### I. These Claims Survive the Guilty Plea

The AG invokes *Tollett*, but the Ninth Circuit explicitly holds that *Tollett* does **NOT** bar *Brady* claims when "the plea was made in the absence of withheld *Brady* material." *Sanchez v. United States*, 50 F.3d 1448, 1453-54 (9th Cir. 1995).

The logic is unassailable: **You cannot waive rights to evidence you don't know exists.** Allowing the State to hide evidence, obtain a plea, then invoke *Tollett* to bar the *Brady* claim would create a perfect mechanism for prosecutorial fraud. *Sanchez* forecloses this.

### J. Conclusion

Six independent *Brady* violations. Each warrants relief. Cumulatively under *Kyles*, they prove a coordinated suppression campaign: fabricate a "threat" using an FBI call the FBI itself cleared as non-threatening, hold a man with zero criminal history on no bail for 90 days, hide the investigator's admission the case was meritless, suppress the victim's exoneration, block access to fourteen months of documented defense evidence, and induce a plea through promises the prosecution knew would be broken.

**The motive is on tape.** When Petitioner asked DAI Peña why this was happening despite his documented PC § 278.7 defense—which Peña validated as "good cause for sure"—Peña's answer was simple: **"You pissed them off."** [01:12:12]. When Peña expressed doubts about filing a warrant against a man he believed would win at trial, his supervisors ordered: **"Just finish the damn warrant and don't worry about it."** [00:27:12].

This was not a prosecution seeking justice. This was retaliation against a father who called out corruption—using *Brady* suppression as the weapon and fabricated "threats" as the cage.

The AG's Answer characterizes DAI Peña's 47 admissions as "sympathizing." This Court need only listen to the recording—or review the forensic analysis in Appendix A—to **understand how egregiously that mischaracterizes the evidence.**

**Ground Three independently warrants habeas relief.**

## X. GROUND FOUR: COERCED PLEA AND INEFFECTIVE ASSISTANCE

### A. The Constitutional Standard

A guilty plea must be voluntary, knowing, and intelligent. *Brady v. United States*, 397 U.S. 742, 755 (1970). A plea "induced by threats, misrepresentation, or improper promises" cannot stand. *Id.* Where a plea "rests in any significant degree on a promise or agreement of the prosecutor," that promise "must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

Petitioner's April 3, 2023 plea was the product of calculated prosecutorial coercion: fabricated grounds for detention, systematic evidence suppression, medical emergencies exploited as leverage, and promises broken within 22 days. Any single circumstance would render the plea

constitutionally infirm. Together, they prove a deliberate scheme to secure a conviction the State knew it could not obtain at trial—because **its own investigator said so**.

## B. The Coercive Circumstances

### 1. Ninety-Day Detention on a Fabricated "Threat"

Petitioner was arrested January 3, 2023, and held without bail for 90 days. The sole justification: an alleged "threat" to the FBI. The full transcript—withheld for 90 days—proves the "threat" was fabricated:

| Timestamp | Petitioner's Actual Words |
|---|---|
| 00:06:33 | "I am not making any threats. I need to make that perfectly clear." |
| 00:07:52 | "I'm calling to ask the FBI to put the pause button on this thing... so somebody doesn't get hurt." |

The FBI operator's response: "Thank you for calling the FBI. I hope you have a great day today." *See Appendix A, Part V for complete transcript and forensic analysis.*

This was not a threat assessment finding danger. This was a concerned citizen cleared by a trained FBI operator. Yet DDA Balerio extracted fragments out of context to cage a man her own investigator said would "probably win at trial" [02:31:23]. **She never charged PC § 422 (criminal threats)—because she knew it would never survive scrutiny.** The "threat" existed solely to manufacture coercive detention.

*Manuel v. City of Joliet*, 580 U.S. 357 (2017), holds that pretrial detention without probable cause is an independent constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), prohibits using detention "punitively or to coerce guilty pleas." DDA Balerio used both.

### 2. Medical Emergencies Exploited

Petitioner had already suffered a life-threatening STEMI heart attack on September 30, 2021. Ninety days of custody with inadequate medical care placed him in physical jeopardy. Physical condition and medical needs are relevant to voluntariness. *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). A plea is involuntary if it is "the product of... physical abuse." *Brady*, 397 U.S. at 750. A defendant pleading guilty to end state-caused medical suffering is not making a voluntary choice—he is yielding to duress.

### 3. The False Promise: "Bryce Would Come Home"

The central inducement for Petitioner's plea was the promise that his son Bryce would return home. Defense counsel Jose Badillo recorded the representations:

| Date | Quote |
|---|---|
|  |  |

| 05/01/23 | "The DA knows... that you resolved the case based on the conversation she and I had with Andrea." [00:16:58] |
|----------|---------------------------------------------------------------------------------------------------------------|
| 05/03/23 | "[DDA Balerio] would be willing to... talk to Andrea again to make sure that she's on the same page and not backing out." [00:02:06] |

*See Appendix A, Part III for complete Badillo recordings.*

**The Breach Timeline—22 Days:**

**April 3, 2023:** Guilty plea entered based on promise Bryce returns home

**April 10, 2023:** Petitioner emails Badillo: "The plea deal is not as was discussed... I am told that I will get NOTHING in family court now and that is not how this plea deal was represented to me."

**April 13, 2023:** Andrea Schuck includes **DDA Balerio** on email chain coordinating breach: "We are not in negotiations until you drop your other cases."

**The prosecutor was copied on the breach. She did nothing.**

Under *Santobello*, this breach alone invalidates the plea. Under *Puckett v. United States*, 556 U.S. 129, 137 (2009), "broken prosecutorial promises fundamental to plea agreements render them invalid." The prosecutor's documented knowledge and calculated silence establishes bad faith. *See Appendix A, Part IV for complete breach documentation.*

**C. Ineffective Assistance of Counsel**

*Strickland v. Washington*, 466 U.S. 668, 687 (1984), requires showing deficient performance and prejudice. In the plea context, prejudice means "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**Deficient Performance:**

Defense counsel Jose Badillo never received the *Brady* material—DAI Peña's 47 admissions, the FBI transcript, Bryce's interview with DDA Balerio. He admitted this on recording: "Did she ever tell you about her conversation with Bryce?" / "NO." / "See, there's something weird there because that's huge right there. That she didn't disclose that..." [04/13/23, 00:07:51]. Counsel failed to investigate the obvious PC § 278.7 defense that Peña himself confirmed existed ("I think you have good cause for sure" [02:38:13]). He advised a guilty plea without knowing the State's own investigator believed Petitioner would win at trial.

**Prejudice:**

When the State's lead investigator says the defendant would "probably win at trial," that "the DA's office should never have accepted your case," and that the matter "should be handled in

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

Family Court and not Criminal Court," any competent attorney advises trial—not a guilty plea. *Lee v. United States*, 137 S. Ct. 1958, 1969 (2017), establishes that prejudice exists where the defendant "would have insisted on going to trial" absent deficient advice. Here, Petitioner was denied the very information that made trial the obvious choice. **The prejudice is not speculative—it is documented in the State investigator's own recorded words.**

### D. This Ground Survives Tollett

Respondent cannot invoke *Tollett* to bar this claim:

**Exception 1—Plea Voluntariness:** Challenging the voluntariness of a plea is a logical impossibility under *Tollett*. A plea cannot simultaneously be involuntary *and* a valid waiver of the claim that it was coerced.

**Exception 2—IAC Regarding Plea:** *Hill v. Lockhart*, 474 U.S. at 56, explicitly permits ineffective assistance claims related to the plea decision.

**Exception 3—Unknown Brady Material:** *Sanchez v. United States*, 50 F.3d 1448, 1453-54 (9th Cir. 1995), holds that *Tollett* does not bar claims where the "plea was made in absence of withheld Brady material."

**All three exceptions apply here. Ground Four survives.**

### E. The Systemic Refusal to Examine Evidence

The coercion did not end with the plea. When Petitioner discovered the Peña recordings in August 2023—four months post-plea—he attempted to present this devastating evidence through every available channel. Every door was slammed shut.

**The Public Defender's Fabricated "Limited Scope":**

After Badillo was relieved, Supervising Attorney Mignon Hilts explicitly refused to investigate: "We have not been appointed to evaluate the specific facts of your criminal case. By pleading guilty you waived your right to a jury trial, therefore the facts and evidence regarding the substance of your case are currently not at issue." [June 29, 2023]

When Petitioner demanded the "court order" authorizing this limitation, Hilts produced a standard minute order stating "PHS/Motions" (Probation Hearing Sentencing/Motions)—routine boilerplate in every criminal case. **There was no court order limiting investigation.** The Public Defender fabricated the restriction to avoid examining evidence of prosecutorial misconduct.

Petitioner provided the Peña recordings, the breach emails, and the names of willing witnesses— DDA Balerio, Badillo, Andrea Schuck. Deputy Public Defender Matthew Ferrara's response to Petitioner's detailed objections: *"See you on 9/21."*

**The Exhaustion Gauntlet:**

With counsel refusing to act, Petitioner filed pro se: two ex parte motions, motion for recusal, motion to dismiss, motion to withdraw guilty plea, PC § 1424 motion, state habeas corpus (Superior Court), state habeas corpus (California Court of Appeal), and state habeas corpus (California Supreme Court).

**Every petition was summarily denied without examining the evidence.** No court—at any level—held a hearing. No court reviewed the recordings. No court addressed the 47 timestamped admissions by the State's own investigator that the case was meritless.

This is not exhaustion failure. This is systemic refusal to engage with constitutional violations. Under *Banks v. Dretke*, 540 U.S. 668, 692 (2003), the State's own misconduct—suppression, fabricated limitations on counsel, summary denials—excuses any procedural defects in developing the record. Petitioner did everything possible. The system refused to listen.

### F. The Ultimate Vindication

On Bryce's eighteenth birthday—the moment he had legal autonomy—he moved in with Petitioner. They live together today.

The alleged "victim of abduction" chose to live with the alleged "abductor" the instant he could legally choose. This is not merely evidence of factual innocence. It is complete vindication. The promise that induced the plea—Bryce coming home—was fulfilled not by the State honoring its word, but by Bryce himself exercising his constitutional right to choose his own residence.

**Ground Four independently warrants habeas relief.**

## XI. GROUND FIVE: RETALIATORY PROSECUTION

### A. The Constitutional Framework

The First Amendment prohibits prosecuting an individual in retaliation for protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Under *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287 (1977), Petitioner must show: (1) protected activity; (2) adverse action; and (3) causal connection. The burden then shifts to the State to prove it would have taken the same action absent the protected activity.

This is not a sufficiency-of-the-evidence claim subject to *Tollett*. Retaliatory prosecution claims examine *why* the State chose to prosecute—the motive—not *whether* sufficient evidence existed. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Petitioner does not argue "the evidence doesn't support conviction." He argues "the State prosecuted me in retaliation for my corruption complaint." These are fundamentally different claims, and vindictive prosecution claims survive guilty pleas. *Blackledge v. Perry*, 417 U.S. 21, 28-30 (1974).

### B. Element One: Protected Activity

On October 21, 2021, Petitioner filed a comprehensive public corruption complaint with the Department of Justice, FBI, San Diego County Board of Supervisors, and other oversight entities. The complaint detailed a "kids for cash" scheme involving family court officials, Commissioner Ratekin's jurisdictional violations, Judge Alksne's conflits of interest, and systematic plans to place Bryce in unnecessary residential treatment for financial profit. The DOJ forwarded the complaint to the FBI for investigation.

Speech exposing government corruption receives the highest First Amendment protection. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987).

**C. Element Two: Adverse Action**

Criminal prosecution is the quintessential adverse action. Petitioner was arrested January 3, 2023, detained 90 days without bail, and coerced into a guilty plea resulting in criminal conviction, loss of parental rights, and ongoing collateral consequences. There is no more severe adverse action the State can take against a citizen.

**D. Element Three: Causal Connection — The Smoking Gun**

This element is typically proved through circumstantial evidence of timing and pretextual weakness. Here, Petitioner has something far more powerful: **direct evidence from the State's own investigator admitting the prosecution was retaliatory**.

When Petitioner asked DAI Peña why he was being prosecuted despite the weak case, Peña's response was devastating:

| Timestamp | DAI Peña's Admission | What It Proves |
|---|---|---|
| **01:12:12** | **"You pissed them off."** | **Direct admission of retaliatory motive** |
| **00:27:12** | **Well, just finish the damn warrant. And don't worry about it.** | Improper prosecutorial motive |
| 02:15:47 | **You [Pena Supervisors or Balerio] asked me [Pena] not to reach out to him [me, Rob Emert]"** | External pressure drove prosecution |
| 00:20:10 | "We're like too deep in it now and the attorneys are pressuring to file criminal charges." | Prosecution driven by lobbying, not evidence |

| 02:46:27 | "They keep pushing our attorneys, their attorneys keep pushing our attorneys... It's that squeaky wheel, man." | Family court attorneys orchestrated prosecution |
|---|---|---|
| **01:47:27** | "They've been attorneys have been communicating with each other and ... they're like. Hey, you need to write a warrant for his arrest. Like, well, give me. His file and I'll read it. **They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have.**" | Decisions made by higher-ups for improper reasons |

*See Appendix A, Part I for complete forensic analysis of all 47 admissions.*

**"You pissed them off"** is not inference. It is not circumstantial evidence. It is a direct admission from the State's lead investigator that the prosecution was motivated by anger at Petitioner's protected speech—not by evidence of criminal conduct.

### E. The 18-Month Timeline Eliminates Innocent Explanation

As documented in Section II, for 18 months after Petitioner filed his corruption complaint (June 2021), the DA's office took no action—despite knowing Petitioner's location and communicating with him openly. During this period, DAI Peña concluded Petitioner would "probably win at trial" [02:31:23], confirmed no evidence of malice for the required element as DAI Pena said Plaintiff had "good cause" for his actions, validated the PC § 278.7 defense ("I think you have good cause for sure" [02:38:13]), and the FBI cleared Petitioner of any threat (December 2022).

Yet despite all this, the prosecution suddenly proceeded in January 2023. **What changed?** Not the evidence—that only got weaker. Not the victim's position—Bryce consistently supported his father. The only change was that Petitioner's corruption complaint was under FBI investigation and exposure of the scheme was imminent.

**The only explanation for prosecuting a case the State's own investigator admitted was baseless is retaliation.**

### F. The State Cannot Meet Its Burden

Under *Mt. Healthy*, once Petitioner establishes the three elements, the burden shifts to the State to prove it would have taken the same action absent the protected activity. 429 U.S. at 287. The State cannot meet this burden. Legitimate prosecutorial discretion *declines* cases where the State's investigator says the defendant will "probably win at trial," where the victim supports the defendant, where there is "no evidence" of a required element, where a complete statutory defense exists, and where the investigator says the DA "should never have accepted your case."

**The State cannot plausibly argue it would have prosecuted this case absent the corruption complaint that "pissed them off."** The investigator's admissions foreclose any legitimate explanation.

## G. This Ground Survives the Guilty Plea

*Blackledge v. Perry*, 417 U.S. at 28-30, established that vindictive prosecution claims survive guilty pleas because they implicate "the very power of the State to bring the defendant into court." When the State lacks constitutional authority to prosecute—whether due to vindictiveness or retaliation—a guilty plea cannot cure that jurisdictional defect.

The claim is not "there was insufficient evidence." The claim is "the decision to prosecute was motivated by my protected speech." A guilty plea may waive challenges to evidence sufficiency, but it cannot waive challenges to the State's constitutional authority to prosecute in retaliation for First Amendment activity.

As Justice Sutherland warned in *Berger v. United States*, 295 U.S. 78, 88 (1935), a prosecutor's obligation is "not that it shall win a case, but that justice shall be done." The evidence here demonstrates complete abandonment of that principle. This prosecution was not pursued to vindicate the law—it was pursued to silence a whistleblower who exposed corruption.

**Ground Five independently warrants habeas relief.**

## XIII. AEDPA ANALYSIS AND REQUEST FOR EVIDENTIARY HEARING

### A. The AEDPA Standard

Under 28 U.S.C. § 2254(d), a federal court may grant habeas relief only if the state court adjudication: (1) resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court; or (2) resulted in a decision that was **based on an unreasonable determination of the facts** in light of the evidence presented in the State court proceeding.

**Both prongs are satisfied here.**

### B. Section 2254(d)(1): Unreasonable Application of Federal Law

The California courts' summary denials—without any substantive engagement with the constitutional claims—constitute an unreasonable application of clearly established Supreme Court precedent. The state courts failed to address: systematic *Brady* suppression including the State's own investigator admitting Petitioner would "probably win at trial" (373 U.S. 83); prosecutorial promises breached within 22 days under *Santobello* (404 U.S. 257); overwhelming evidence of systematic judicial bias under *Caperton* (556 U.S. 868); the jurisdictional challenge under *Blackledge* (417 U.S. 21); and compelling actual innocence evidence—including the victim's voluntary return to live with Petitioner—under *Schlup* (513 U.S. 298).

The pattern of summary denials without substantive analysis is the very definition of "unreasonable application" under § 2254(d)(1).

## C. Section 2254(d)(2): Unreasonable Determination of Facts

The state courts unreasonably determined the facts by ignoring DAI Peña's 47 recorded admissions that the case was meritless, accepting the "FBI threat" narrative without reviewing the full transcript proving Petitioner explicitly stated "I am not making any threats," failing to consider the victim's own statement that "my dad didn't do anything wrong... **(Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."**ignoring the jurisdictional defect from Commissioner Ratekin's CCP § 170.6 denial, and overlooking the temporal impossibility that Petitioner could not have "waived" claims about evidence discovered four months post-plea.

These determinations are not merely wrong—they are *unreasonable* in light of the record evidence.

## D. The Cullen v. Pinholster Exception

Under *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), federal habeas review is generally limited to the state court record. However, this limitation does not apply when: (1) the state court's decision was "contrary to" clearly established law (not merely an "unreasonable application"); or (2) the petitioner was prevented from developing the record by state action.

Both exceptions apply. The state courts' summary denials—offering no reasoning whatsoever—are "contrary to" clearly established law requiring substantive constitutional analysis. Under *Banks v. Dretke*, 540 U.S. 668, 692 (2003), Petitioner's failure to develop the state court record was caused by the State's own misconduct: 90-day coercive detention, *Brady* suppression, and counsel who refused to investigate (as documented in Section X).

## E. Request for Evidentiary Hearing

Petitioner respectfully requests an evidentiary hearing under 28 U.S.C. § 2254(e)(2). The factual record requires development on:

**The Brady Violations:** What materials were in the prosecution file? Why was the Peña recording withheld while other Peña recordings were disclosed? Why was the Bryce interview never disclosed to defense counsel?

**The Coerced Plea:** What representations were made regarding Bryce returning home? What was DDA Balerio's role in those representations? Why did the prosecution witness the breach and remain silent?

**The Fabricated Threat:** What did the FBI's threat assessment conclude? Why was the full transcript withheld for 90 days while Petitioner remained detained?

Under *Townsend v. Sain*, 372 U.S. 293, 313 (1963), an evidentiary hearing is required when there are disputed factual issues and the petitioner did not receive a full and fair hearing in state court. Petitioner received no evidentiary hearing at any level—Superior Court, Court of Appeal, or Supreme Court. Every request was summarily denied.

**The Attorney General's continued refusal to answer whether she even requested the prosecution file—despite this Court's orders and over 70 days of opportunity—makes an evidentiary hearing essential.** The Court cannot assess *Brady* compliance when the State continues to hide the relevant materials. Her silence is not neutral; it is evidence of what the file contains.

### F. Alternatively, De Novo Review Is Warranted

Where the state court adjudication is "contrary to" clearly established law or involves no reasoned decision at all, de novo review applies. *Panetti v. Quarterman*, 551 U.S. 930, 948 (2007). The California courts' summary denials—without any analysis of the constitutional claims—warrant de novo review of each ground.

## XIV. CONCLUSION AND PRAYER FOR RELIEF

### A. Summary

The State's own investigator said Petitioner would "probably win at trial." [02:31:23]

The State's own investigator validated Petitioner's complete statutory defense: "I think you have good cause for sure." [02:38:13]

The State's own investigator admitted the case "should be handled in Family Court and not Criminal Court" [02:21:50] and that "the DA's office should never have accepted your case." [02:54:47]

The alleged victim—Petitioner's son—told the prosecutor: **(Timestamp 20:43):"I want to be his witness for my dad . He's done nothing wrong."**

On his 18th birthday, that same son voluntarily returned to live with Petitioner. He remains there today.

The FBI cleared Petitioner of any threat. The prosecution fabricated one anyway to justify 90 days of coercive detention. The plea was induced by a promise—Bryce comes home—that was breached within 22 days, with the prosecutor copied on the breach.

**Respondent's Answer offers approximately three pages of substantive argument.** It does not address DAI Peña's 47 plus recorded admissions. It does not address the victim's exoneration. It does not address the fabricated FBI threat. It does not address the broken plea promise. It does not address the temporal impossibility of "waiving" claims about evidence discovered four

months post-plea. Instead, Respondent mischaracterizes devastating professional assessments as mere "sympathy," contradicts her own Lodgment 25 on exhaustion, and invokes *Tollett* against claims falling squarely within six established exceptions.

The Attorney General has refused—for over 70 days and despite three court orders—to answer one simple question: *Did you request the prosecution file before certifying the lodgment as complete?*

**Her silence is not neutral. It is a confession.**

**B. Prayer for Relief**

WHEREFORE, Petitioner Robert Emert respectfully prays that this Court:

      1. **GRANT** the Petition for Writ of Habeas Corpus;

      2. **VACATE** the judgment of conviction entered on April 3, 2023, in San Diego Superior Court Case No. SCD290570;

      3. **ORDER** Petitioner's immediate release from all terms of probation, parole, or supervised release;

      4. **EXPUNGE** the conviction from Petitioner's record;

      5. **ORDER** an evidentiary hearing on the *Brady* violations, coerced plea, and prosecutorial misconduct;

      6. **ORDER** Respondent to produce, within 14 days, a sworn declaration stating:

            • Whether the prosecution file was requested before the Answer was filed;

            • For each category of *Brady* material identified in this Traverse: EXISTS / DOES NOT EXIST / CANNOT BE LOCATED;

            • Whether each item was disclosed to defense counsel before the April 3, 2023 guilty plea;

      7. **IMPOSE SANCTIONS** against the Attorney General for misrepresentations to this Court regarding exhaustion and for continued non-compliance with discovery obligations;

      8. **GRANT** such other and further relief as this Court deems just and proper.


**DATED:** January 16 2026

Respectfully submitted,


/s/ Robert Emert
ROBERT EMERT

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

Petitioner, Pro Se

## DECLARATION OF PETITIONER

I, Robert Emert, declare as follows:

1. I am the Petitioner in this action. I have personal knowledge of the facts stated in the foregoing Traverse to Answer to Petition for Writ of Habeas Corpus and Appendix A, and if called as a witness, I could and would competently testify thereto.

2. The quotations attributed to District Attorney Investigator Luis Peña, Deputy District Attorney Jennifer Balerio, defense counsel Jose Badillo, Andrea Schuck, and the FBI are accurate transcriptions from audio recordings in my possession. The timestamps cited correspond to the actual timestamps in those recordings.

3. I possess copies of the recordings and documents referenced in the Traverse and Appendix A, and I am prepared to provide them to this Court upon request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 20 2026, at San Diego, California.


/s/ Robert Emert

ROBERT EMERT

Petitioner, Pro Se

## PROOF OF SERVICE

### Case No. 3:25-cv-00820-TWR-BLM

I, Robert Emert, declare as follows:

I am over the age of 18 years and not a party to this action. On January 19 2026, I served the following documents:

    1. Petitioner's Traverse to Answer to Petition for Writ of Habeas Corpus

    2. Appendix A: Comprehensive Forensic Transcript Analysis

    3. Motion for Leave to Exceed Page Limit on Traverse

    4. [Proposed] Order Granting Petition for Writ of Habeas Corpus

on the following party by the method indicated:

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

**VIA EMAIL:**

     Kristen Chenelia

     Deputy Attorney General

     Office of the Attorney General

     State of California

     Kristen.Chenelia@doj.ca.gov

     *Counsel for Respondent*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 20 2026, at San Diego, California.

**/s/ Robert Emert**

**ROBERT EMERT**

**Petitioner, Pro Se**


### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB EMERT,<br><br>    Petitioner,<br><br>v.<br><br>SAN DIEGO PROBATION DEPARTMENT,<br><br>    Respondent. | Case No. 3:25-cv-00820-TWR-BLM<br><br><br>**[PROPOSED] ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>District Judge: Hon. Todd W. Robinson<br><br>Magistrate Judge: Hon. Barbara Lynn Major |

**[PROPOSED] ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

Having considered Petitioner's Amended Petition for Writ of Habeas Corpus, Respondent's Answer, Petitioner's Traverse, Appendix A (Forensic Analysis), and all lodged documents, and good cause appearing therefor, the Court makes the following findings and order:

## FINDINGS OF FACT

**1.** On April 3, 2023, Petitioner Robert Emert entered a guilty plea to one count of violating California Penal Code § 278.5(a) (deprivation of custody) in San Diego Superior Court Case No. SCD290570.

**2.** Prior to the guilty plea, the State's lead investigator, District Attorney Investigator Luis Peña, made the following recorded admissions on September 7, 2022:

> a. "You definitely will get a trial and personally, I think you'll win that." [02:31:23]

> b. "I think you have good cause for sure." [02:38:13]

> c. "The DA's office should never have accepted your case." [02:54:47]

> d. "I believe this should be handled in Family Court and not Criminal Court." [02:21:50]

**3.** These admissions were never disclosed to Petitioner's defense counsel before the guilty plea.

**4.** On or about the same date, Deputy District Attorney Jennifer Balerio interviewed the alleged victim, Bryce Emert, who stated: "My dad didn't do anything wrong... **(Timestamp 20:43):**

**"I want to be his witness for my dad . He's done nothing wrong." (Timestamp ~00:56):"you know, ever since I've been taking out and taken out of this equation I've had the opportunity to stay with my dad... Everything has just been great, you know.."**

This interview was never disclosed to defense counsel.

**5.** Petitioner was detained for 90 days (January 3, 2023 to April 3, 2023) based on an alleged "threat" to the FBI. The full FBI transcript, withheld for 90 days, reveals Petitioner explicitly stated: "I am not making any threats. I need to make that perfectly clear." [00:06:33]

**6.** The guilty plea was induced by a promise that Petitioner's son Bryce would return home. This promise was breached within 22 days, with DDA Balerio copied on email correspondence documenting the breach.

**7.** On Bryce Emert's 18th birthday, he voluntarily returned to live with Petitioner. He remains there today.

**8.** Respondent's Answer failed to address the substance of DAI Peña's 47 recorded admissions, the victim's exculpatory statements, the fabricated FBI threat, or the broken plea promise.

**9.** The Attorney General failed to answer, despite repeated court orders and over 70 days of opportunity, whether she requested the prosecution file before certifying the lodged record as "complete."

## CONCLUSIONS OF LAW

**1. Brady v. Maryland Violation:** The State suppressed material exculpatory evidence, including DAI Peña's recorded admissions and DDA Balerio's interview with the alleged victim. This evidence was favorable to the defense, was suppressed by the prosecution, and was material to the outcome. 373 U.S. 83 (1963).

**2. Santobello v. New York Violation:** The guilty plea rested on a prosecutorial promise that was breached within 22 days. The prosecutor's documented knowledge of the breach and failure to act renders the plea involuntary. 404 U.S. 257 (1971).

**3. Actual Innocence Under Schlup v. Delo:** The new evidence—including the State investigator's admissions, the victim's exculpatory statements, and the victim's voluntary return to Petitioner—demonstrates that no reasonable juror would have convicted Petitioner. 513 U.S. 298 (1995).

**4. Tollett v. Henderson Is Inapplicable:** Petitioner's claims fall within established exceptions to *Tollett*: (a) *Brady* material unknown at time of plea; (b) involuntariness of the plea itself; (c) ineffective assistance regarding the plea decision. *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995).

**5. Structural Error:** The denial of Petitioner's *Faretta* motion constitutes structural error requiring automatic reversal regardless of prejudice. *Faretta v. California*, 422 U.S. 806 (1975); *McKaskle v. Wiggins*, 465 U.S. 168 (1984).

**6. AEDPA Standard Satisfied:** The state courts' summary denials, without any substantive analysis of Petitioner's constitutional claims, constitute an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1).

## ORDER

**IT IS HEREBY ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **GRANTED**;

2. The judgment of conviction entered on April 3, 2023, in San Diego Superior Court Case No. SCD290570 is **VACATED**;

3. Petitioner is **RELEASED** from all terms of probation, parole, supervised release, and any other conditions imposed as a result of the vacated conviction;

4. The conviction shall be **EXPUNGED** from Petitioner's record, and all state agencies are directed to update their records accordingly;

5. Respondent shall take no further action to enforce the vacated judgment;

6. The Clerk shall serve copies of this Order on all parties and on the San Diego Superior Court.

**IT IS SO ORDERED.**

DATED: _____


_____
HONORABLE TODD W. ROBINSON
United States District Judge

# APPENDIX A
## COMPREHENSIVE FORENSIC TRANSCRIPT ANALYSIS

IN SUPPORT OF PETITIONER'S TRAVERSE TO
RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

---

### NOTICE OF INTEGRAL APPENDIX

This Appendix A is an INTEGRAL AND INSEPARABLE COMPONENT of Petitioner's Traverse filed on January 16, 2026. This Appendix is incorporated by reference throughout the Traverse and contains evidentiary materials essential to the Court's consideration of Petitioner's claims.

Separation of this Appendix from the Traverse, or treatment as a standalone exhibit subject to sealing or restricted access, would alter the court record and deprive the Court of evidence directly referenced in the Traverse's legal arguments.

---

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

> *Fed. R. Civ. P. 10(c): "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."*