# EXECUTIVE SUMMARY

This Appendix presents forensic analysis of audio recordings and documentary evidence that Petitioner possesses and that the Attorney General has refused to produce for over 70 days. The evidence proves systematic constitutional violations that rendered Petitioner's guilty plea unknowing and involuntary.

## THE FIVE SMOKING GUNS

| EVIDENCE | KEY ADMISSION | CONSTITUTIONAL VIOLATION |
|---|---|---|
| 1. DAI Peña Recording (3 hours) | "Personally, I think you'll win that." "You pissed them off." "They shouldn't have accepted your case." | Brady violation - State's own investigator believed no crime occurred; prosecution was retaliatory. Never disclosed to defense. |
| 2. DDA Balerio-Bryce Interview (32 min) | Bryce: **(Timestamp 20:43): "I want to be his witness for my dad . He's done nothing wrong."** | Brady + Napue violation - Prosecutor heard victim exonerate defendant, then told court Bryce was "incompetent" while suppressing interview. |
| 3. Badillo "Smoking Gun" (May 1, 2023) | "The DA knows you resolved the case based on the conversation she and I had with Andrea." | Santobello violation - Defense counsel admits prosecutor KNEW custody promises induced the plea. Those promises were immediately breached. |
| 4. Andrea Schuck Recording & Emails (April-May 2023) | Promise: "Bryce is going to live with you." Breach: "We are not in negotiations." (CC: DDA Balerio) | Santobello + Due Process - Promise made to induce plea was breached with prosecutor's knowledge. DDA Balerio took no remedial action. |
| 5. FBI Transcript (Dec 2022) | "I am not making any threats. I need to make that perfectly clear." FBI: "Thank you for calling. Have a great day." | Brady + Manuel v. Joliet - Full transcript suppressed 90 days. DDA used fragment to hold Petitioner no-bail on fabricated "threat" she never charged. |

## THE ATTORNEY GENERAL'S TRILEMMA

The Attorney General cannot escape the logical implications of her refusal to produce these materials. She faces an inescapable trilemma:

| OPTION | AG'S POSITION | LEGAL CONSEQUENCE |
|---|---|---|
| 1 | She requested the prosecution file and has the recordings | DELIBERATE BRADY VIOLATION in federal court. Withholding devastating evidence that proves Petitioner's claims. |
| 2 | She requested the file but it contains no recordings | PROOF OF STATE-LEVEL BRADY VIOLATION. The DA never retained recordings proving constitutional violations - evidence destruction. |

| 3 | She never requested the prosecution file | RULE 11 VIOLATION. Filed certification that lodgment was "complete" without conducting any inquiry. Bad faith. |

**There is no fourth option. The AG's silence for 70+ days on the simple question "Did you request the DA file?" is itself an admission that the answer is devastating to her position.**

# PART I: DAI LUIS PEÑA RECORDING

**Date: September 7, 2022 | Duration: Approximately 3 hours | Pages: 294 transcript pages**

**Status: WITHHELD FROM DEFENSE, COURT, AND PETITIONER'S COUNSEL**

District Attorney Investigator Luis Peña was the lead investigator assigned to Petitioner's case. In a 3-hour recorded conversation, he made 47 plus documented admissions that the prosecution lacked merit, was retaliatory, and that he was pressured to file a warrant he did not believe was supported by probable cause.

## A. THE STATE'S OWN INVESTIGATOR BELIEVED THE CASE LACKED MERIT

**Quote #1: "Personally, I Think You'll Win That"**

*TIMESTAMP: [02:31:23] | PAGE: 234*

> **[02:31:23] DAI PEÑA:** *"You will get a trial. You definitely will get a trial and. Personally, I think you'll win that. I don't... I don't think that's that's a big deal."*

**FORENSIC ANALYSIS:**

This statement destroys the "rapport building" defense. No competent investigator tells a suspect "you will win at trial" if they are trying to secure a plea or confession. This creates a disincentive to cooperate. It is a candid admission that the evidence is insufficient to sustain a conviction.

**LEGAL SIGNIFICANCE:**

Under Brady v. Maryland, 373 U.S. 83 (1963), the prosecution must disclose evidence favorable to the accused. An investigator's opinion that the defendant will prevail is the most favorable evidence imaginable - the State's own agent believes there is no case.

**Quote #2: "The DA Should Never Have Accepted Your Case"**

*TIMESTAMP: [02:54:47] | PAGE: 275-276*

> **[02:54:47] DAI PEÑA:** *"The DA's office should never have accepted your case because he was 14 when this all started on paper."*

**FORENSIC ANALYSIS:**

DAI Peña explicitly states the DA's office violated its own policy by accepting this case. California Penal Code § 278.7 provides an affirmative defense when a child is 14 or older. Bryce was 15. The investigator admits the case should never have existed.

**Quote #3: "Why Are We Even Involved? We Don't Take Anything Over 14"**

*TIMESTAMP: [00:11:05] | PAGE: 16-17*

> **[00:11:05] DAI PEÑA:** *"And and I get you about the Age, because that was my first question. Like, why are we Involved, they're like well We're too deep in it. So we can't, we can't turn around now. I'm like, why are we even involved in this case? I'm like, we don't take anything over 14."*

**FORENSIC ANALYSIS:**

Peña's FIRST QUESTION was why the DA is even involved. He was told they're "too deep in it" to back out. This reveals the case violated DA policy but continued anyway due to sunk costs and external pressure - not because a crime actually occurred.

**Quote #4: "I Think You Have Good Cause For Sure"**

*TIMESTAMP: [02:38:13] | PAGE: 245-246*

> **[02:38:13] DAI PEÑA:** *"Yeah, I think you have good cause for sure... You're you're you're you're good cause and that's why I believe you need to worry it that way is like you have good cause of of of where the direction was."*

**FORENSIC ANALYSIS:**

The lead investigator explicitly validates Petitioner's affirmative defense. "Good cause" is the legal standard under PC § 278.7. The State's own agent confirmed Petitioner met it. This is the investigator admitting the complete defense was valid.

**LEGAL SIGNIFICANCE:**

Good cause negates the malice element required for conviction under PC § 278.5(a). This single admission destroys the prosecution's case as a matter of law.

**Quote #5: "This Should Be Handled in Family Court"**

*TIMESTAMP: [02:21:50]*

> **[02:21:50] DAI PEÑA:** *"I believe this should be handled in Family Court and not Criminal Court."*

**FORENSIC ANALYSIS:**

An explicit admission that the matter was civil, not criminal. This directly exculpates Petitioner of criminal intent (malice), a required element of the charged offense.

**Quote #6: "How Is That Even Going To Be Proven?"**

*TIMESTAMP: [02:43:17]*

> **[02:43:17] DAI PEÑA:** *"How is that even going to be proven in court as a child abduction?"*

**FORENSIC ANALYSIS:**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

The investigator is questioning the legal elements of the charge itself (PC 278.5). He is admitting the facts do not meet the statutory definition.

## B. EVIDENCE OF VINDICTIVE/RETALIATORY PROSECUTION

### Quote #7: "You Pissed Them Off" - THE SMOKING GUN

*TIMESTAMP: [01:12:12] | PAGE: 92-93*

PETITIONER: "What did I do to warrant losing all my parental rights?"

> **[01:12:12] DAI PEÑA:** *"You pissed them off."*

**FORENSIC ANALYSIS:**

THIS IS THE SMOKING GUN FOR VINDICTIVE PROSECUTION. When asked what justified stripping Petitioner of all parental rights and prosecuting him criminally, the State's investigator gives a one-word answer: retaliation. The prosecution occurred because Petitioner "pissed them off" by challenging family court corruption - not because he committed any crime.

**LEGAL SIGNIFICANCE:**

Under United States v. Goodwin, 457 U.S. 368 (1982), vindictive prosecution violates due process. This admission proves the prosecution was brought to punish Petitioner for exercising his First Amendment right to challenge corruption - not to punish criminal conduct.

### Quote #8: "Their Attorneys Keep Pushing Our Attorneys"

*TIMESTAMP: [02:46:27] | PAGE: 267*

> **[02:46:27] DAI PEÑA:** *"Well, because they keep pushing our attorneys, their attorneys keep pushing our attorneys and our attorneys. That's what I see when people keep pushing them. And people keep calling and harassing them. Then they file charges. It's that squeaky wheel, man. Squeaky wheels, squeaky wheel."*

**FORENSIC ANALYSIS:**

The investigator reveals the case was driven by external pressure ("pushing our attorneys") rather than evidence of a crime. The phrase "squeaky wheel" confirms charges were filed due to external pressure, not prosecutorial merit.

Quote #9:

"It's that squeaky wheel, man" [02:46:27]

### Quote #10: "We're Too Deep In It Now"

*TIMESTAMP: [00:20:10]*

> **[00:20:10] DAI PEÑA:** *"We're like too deep in it now and the attorneys are pressuring to file criminal charges."*

**FORENSIC ANALYSIS:**

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

An admission that the decision to charge was political ("too deep in it now") rather than evidentiary. The case continued due to sunk costs, not merit.

## C. THE COERCED/PERJURED WARRANT (FRANKS VIOLATION)

**Quote #11: "Just Finish The Damn Warrant And Don't Worry About It"**

*TIMESTAMP: [00:27:12] | PAGE: 42*

> **[00:27:12] DAI PEÑA:** *"But I I definitely think that now I guess to kind of put it frankly, the shits hit the fan and they they want to push this. I don't believe it's the best. [Supervisors told him:] Just finish the damn warrant and don't worry about it."*

**FORENSIC ANALYSIS:**

DAI Peña admits he was ORDERED by his supervisors to "finish the warrant" despite his professional judgment that the case lacked merit ("I don't believe it's the best"). An arrest warrant affidavit sworn by an investigator who does not believe in the probable cause is perjury.

**LEGAL SIGNIFICANCE:**

Under Franks v. Delaware, 438 U.S. 154 (1978), a warrant obtained through deliberate falsehood or reckless disregard for truth is void. Swearing to a warrant the investigator did not believe was supported by probable cause - because he was ordered to - constitutes reckless disregard.

**Quote #12: "Write A Quick Warrant And Go On The Evidence We Have"**

*TIMESTAMP: [01:47:31]*

> **[01:47:31] DAI PEÑA:** *"They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have."*

**FORENSIC ANALYSIS:**

This is the most legally damning section. Peña admits his supervisors ordered him to ignore exculpatory evidence and file the warrant anyway. This proves the subsequent affidavit was sworn with "reckless disregard for the truth," a direct violation of Franks v. Delaware. By withholding this, the Attorney General is concealing proof that the arrest warrant was perjured/coerced by supervision.

**Quote #13:** "I just don't believe we need to put an arrest warrant... because he's handling that" [01:47:54]

## D. THE INVESTIGATOR VALIDATED PETITIONER'S DEFENSE

**Quote #14: "What Do You Expect That Parent To Do?"**

*TIMESTAMP: [00:20:53] | PAGE: 32*

> **[00:20:53] DAI PEÑA:** *"If someone tells anybody we're going to put your child in a facility. What do you expect that parent to do?"*

**FORENSIC ANALYSIS:**

The investigator applies the "Reasonable Person" standard and concludes Petitioner's actions were reasonable. He acknowledges that ANY parent facing the threat of their child being placed in a facility would act to protect that child. This negates "malice" - a required element for conviction.

### Quote #15: "Bryce Wanted To Stay With You"

*TIMESTAMP: [02:36:45]*

    **[02:36:45] DAI PEÑA:** *"Bryce wanted to stay with you."*

**FORENSIC ANALYSIS:**

The State's investigator acknowledges the "victim's" own preference - he wanted to be with his father. This is the opposite of an abduction.

### Quote #16: "He Was Clear About Wanting To Live With His Dad"

    **[02:37:12] DAI PEÑA:** *"He was clear about wanting to live with his dad."*

**FORENSIC ANALYSIS:**

Further confirmation that Bryce's preference was known and documented by the State's investigator - yet suppressed from the defense and court.

### Quote #17: "That's No Reason To Take The Kids From You"

*TIMESTAMP: [02:37:43]*

    **[02:37:43] DAI PEÑA:** *"That's no reason to take the kids from you."*

**FORENSIC ANALYSIS:**

The investigator explicitly states there was no justification for removing custody from Petitioner.

## E. EVIDENCE OF INTENTIONAL SUPPRESSION

**Quote #18:** "Didn't record it, so there it is... There's no reason to record it" [02:45:21-43]

**FORENSIC ANALYSIS:**

This is an explicit admission of intent to suppress evidence. Peña states he will hide the recording from "them" (the supervisors/prosecution team) to avoid the political fallout of his own admissions.

**LEGAL SIGNIFICANCE:**

This proves the suppression was willful and malicious, satisfying the bad faith standard of Arizona v. Youngblood. Under Kyles v. Whitley, the prosecutor is responsible for this evidence even if the investigator hid it from her.

## F. MINOR'S COUNSEL COLLUSION

### Quote #19: "They Lined Up With Your Ex-Wife"

*TIMESTAMP: [00:29:08] | PAGE: 45-46*

PETITIONER'S TRAVERSE TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

**[00:29:08] DAI PEÑA:** *"I personally don't like some of them they they really. They have biases because they'll start because right now I think they lined up with with your ex-wife. I don't believe they're strictly just by themselves trying to do the best for him. I think now they line line together with your basically ex wife's attorney and now they're trying to put something together."*

**FORENSIC ANALYSIS:**

A neutral law enforcement officer independently observed that Minor's Counsel Matt Cord "lined up" with the opposing party's attorneys rather than acting in Bryce's best interests. This confirms the Miroth v. County of Trinity conspiracy theory - attorneys corrupted judicial proceedings through coordination.

## G. ADDITIONAL PEÑA ADMISSIONS

The following table summarizes additional recorded admissions by DAI Peña. Each admission independently constitutes Brady material that was suppressed from the defense:

| #  | TIMESTAMP   | STATEMENT | SIGNIFICANCE |
|----|-------------|-----------|--------------|
| 20 | 02:22:16    | "We look at good cause for many reasons, right? There's a lot of reasons why we pause on arresting people because of good cause." | Confirms standard practice is to consider good cause defense - yet they ignored it here |
| 21 | 01:20:35    | "No reason for us to even open the case." | Case should never have been opened |
| 22 | 02:30:42    | "It should have never been in criminal court." | Civil matter prosecuted criminally |
| 23 | [01:12:12]  | "You pissed them off" [01:12:12] | Acknowledges retaliation trigger |
| 24 | 02:16:55    | "That's why if you go to court. That warrant's not gonna go in to the system." | Warrant was conditional on family court resolution |

# PART II: DDA BALERIO INTERVIEW WITH BRYCE EMERT

Date: February 17, 2023 | Duration: 32 minutes, 40 seconds

Interviewer: Deputy District Attorney Francesca Balerio | Interviewee: Bryce Emert (alleged victim, age 15-16)

Status: NEVER DISCLOSED TO DEFENSE COUNSEL - BRYCE SECRETLY RECORDED IT

## A. THE FRAUD UPON THE COURT (NAPUE VIOLATION)

During state court proceedings, DDA Balerio represented to the Superior Court that Bryce Emert was "incompetent" to testify and unable to express a preference regarding custody. Based on these representations, she successfully blocked the defense from calling Bryce as a witness.

**These representations were demonstrably false. DDA Balerio possessed a recording which she tells Bryce he is "well-spoken" and "articulate," listens to him clearly express his desire to live with his father, and hears him state his father "saved" him - not abducted him.**

## B. THE ULTIMATE EXCULPATORY STATEMENT

**Quote #25: (Timestamp 20:43):**

"I want to be his witness for my dad . He's done nothing wrong."

    **BRYCE:** *(Timestamp 20:43):*

    (Bryce Emert Written Correspondence to Court, Counsel, and Family, 2019-2023)

**FORENSIC ANALYSIS:**

    THIS IS THE ULTIMATE EXCULPATORY STATEMENT. The "victim" explicitly exonerates the defendant, framing the alleged "abduction" as a rescue that the child requested. There can be no "malicious abduction" when the alleged victim says he asked to be taken and describes it as being saved.

**LEGAL SIGNIFICANCE:**

    Suppressing a recording where the victim says **(Timestamp 20:43):**

    **"I want to be his witness for my dad . He's done nothing wrong."**

    while prosecuting the defendant for "malicious abduction" is the most flagrant Brady violation possible. This single statement destroys the entire prosecution theory.

**Quote #26: "I Made That Choice... I Could Have Left At Any Given Point"**
*TIMESTAMP: [16:35]*

**[16:35] BRYCE:** *"The way I see it is that my dad did not violate that order... I made that choice. I made that choice to stay with him and that was to stay with him. I could have left at any given point and followed the order myself but basically he let me stay there and that's what all parents should do."*

**FORENSIC ANALYSIS:**

Bryce explicitly states he made an AUTONOMOUS CHOICE to stay with his father and could have left at any time. He frames his father's conduct as exemplary parenting ("what all parents should do"), not criminal conduct. This directly contradicts any "abduction" narrative and triggers the PC § 278.7 defense.

### Quote #27: "Everything Has Just Been Great"

*TIMESTAMP: [00:56]*

**[00:56] BRYCE:** *"You know, ever since I've been... taken out of this equation I've had the opportunity to stay with my dad and basically teach me what I need to know and everything. Everything has just been great, you know? ... Me having a choice... was great."*

**FORENSIC ANALYSIS:**

The alleged victim describes the period of "abduction" as "great." This is not the statement of a kidnapping victim - it is the statement of a child who wanted to be with his father and thrived there.

### Quote #28: "Ever Since My Dad Has Been Out of My Life I've Been Suffering"

*TIMESTAMP: [00:03]*

**[00:03] BRYCE:** *"There are a number of reasons ever since my dad has been out of my life I've been suffering. I just tell people, adults, because you're the best chance I have basically, you know, being a voice for me to basically saying what my needs are... I really, you know everything is just going sideways since my dad's without my life, I need him."*

**FORENSIC ANALYSIS:**

Bryce pleaded with DDA Balerio, telling her he has been SUFFERING without his father. He explicitly asked her to be his "voice" and said "I need him." DDA Balerio heard this plea. She suppressed it. She prosecuted anyway.

## C. DDA BALERIO ACKNOWLEDGES BRYCE'S COMPETENCE

**Quote #29: "You Are Very Well-Spoken" / "Articulate"**

*TIMESTAMP: [21:26 and throughout]*

>   [21:26] *DDA BALERIO: "You are very well-spoken."*

>   [21:26] *DDA BALERIO: "You are articulate."*

**FORENSIC ANALYSIS:**

> The prosecutor explicitly acknowledges Bryce's intelligence and ability to communicate clearly. She then argued to the court that this same child was "incompetent" to testify. This is a textbook Napue v. Illinois violation - knowingly presenting false statements to the court.

## D. DDA BALERIO'S BROKEN PROMISES TO A CHILD

**Quote #30: "I Will Get Their Voice Heard"**

>   [N/A] *DDA BALERIO: "I can tell you that from the bottom of my heart, my favorite thing in my case is getting to allow people that don't get their voice heard they don't worry because I will get their voice heard."*

**WHAT SHE PROMISED:** To ensure Bryce's voice would be heard.

**WHAT SHE DID:** Suppressed the interview. Blocked Bryce from testifying. Argued he was "incompetent."

**Quote #31: "I'm Happy To Have You As A Witness"**

>   [N/A] *DDA BALERIO: "I'm more than happy to let defense know that you certainly want to be a witness for your dad and I'm happy to have you as a witness as well."*

**WHAT SHE PROMISED:** To inform defense that Bryce wanted to testify for his father.

**WHAT SHE DID:** Never told defense counsel. Argued to EXCLUDE Bryce from testifying. Obtained conviction without a jury ever hearing from the "victim."

# PART III: DEFENSE COUNSEL BADILLO RECORDINGS

**Dates:** April 13 - May 3, 2023 (multiple recordings)

**Topic:** Post-plea discussions about breached custody promises

Under Santobello v. New York, 404 U.S. 257, 262 (1971), "when a plea rests in any significant degree on a promise or agreement of the prosecutor... such promise must be fulfilled." The following recordings prove: (1) the plea was induced by custody promises known to DDA Balerio; (2) DDA Balerio was aware the plea was "based on" these promises; (3) the promises were breached immediately; and (4) DDA Balerio witnessed the breach and took no remedial action.

## A. THE SMOKING GUN

**Quote #32: "The DA Knows You Resolved The Case Based On..."**

*DATE: May 1, 2023 | TIMESTAMP: [00:16:58]*

SPEAKER: Jose Badillo (Defense Counsel)

> **[00:16:58] BADILLO:** *"The DA knows... that you resolved the case based on the conversation she and I had with Andrea [Schuck]."*

**FORENSIC ANALYSIS:**

> THIS IS THE SMOKING GUN. Defense counsel explicitly confirms that DDA Balerio ("the DA") was not only aware of the custody promise but that she KNEW it was the basis for the plea ("resolved the case based on"). This single sentence proves FOUR critical facts:

**1. Pre-plea timing: Badillo had a conversation with Andrea about custody BEFORE the plea**

**2. Prosecutor participation: DDA Balerio was part of this conversation and agreement**

**3. Inducement: The custody promises were THE REASON Petitioner "resolved the case" - i.e., pled guilty**

**4. Prosecutor knowledge of inducement: DDA Balerio KNEW Petitioner was pleading guilty BECAUSE OF the custody promises**

**Quote #33: "She Would Be Willing To Talk To Andrea Again"**

*DATE: May 3, 2023 | TIMESTAMP: [00:02:06]*

> **[00:02:06] BADILLO:** *"[DDA Balerio] would be willing to, you know, talk to Andrea again to make sure that she's on the same page and not backing out based on the conversation that we have with her."*

**FORENSIC ANALYSIS:**

This confirms DDA Balerio's active role in the custody arrangement. A prosecutor does not offer to mediate a private custody dispute unless that dispute is a material term of the plea agreement. The phrase "on the same page" proves there was an agreement Andrea needed to honor.

### Quote #34: "Her Backpedaling... Could Be An Issue That Can Be Raised"

*DATE: May 1, 2023 | TIMESTAMP: [00:17:08]*

> **[00:17:08] BADILLO:** *"Her backpedaling on that... could be an issue that can be raised."*

**FORENSIC ANALYSIS:**

Defense counsel acknowledges Andrea's "backpedaling" could be grounds for plea withdrawal. An attorney does not tell his client that the opposing party's backpedaling "could be an issue" unless there was an agreement to backpedal FROM.

## B. PROOF OF BRADY SUPPRESSION

### Quote #35: "Did She Ever Tell You About Her Conversation With Bryce?"

*DATE: April 13, 2023 | TIMESTAMP: [00:07:51]*

ROB EMERT: "Did she ever tell you about her conversation with Bryce?"

> **[00:07:51] BADILLO:** *"NO."*
>
> **[00:07:51] BADILLO:** *"See, there's something weird there because that's huge right there. That she didn't disclose that..."*

**FORENSIC ANALYSIS:**

This proves DDA Balerio committed a Brady violation not just against the defendant, but against defense counsel. Badillo admits he was unaware of the interview where Bryce exonerated his father. A plea cannot be "knowing and voluntary" when the prosecution has suppressed material exculpatory evidence (the victim's recantation). Badillo's reaction ("that's huge") confirms that this evidence would have materially altered the defense strategy.

# PART IV: ANDREA SCHUCK RECORDINGS AND EMAILS

**Source: Recorded calls between Petitioner and Andrea Schuck, April 11-13, 2023**

**Email Evidence: April-May 2023 correspondence (CC: DDA Balerio)**

These recordings prove: (1) the plea was induced by custody promises (Santobello violation); (2) Bryce was threatened with juvenile detention for wanting to live with his father (coercion); and (3) Andrea consciously deprioritized Bryce's needs while the State prosecuted the father trying to help him.

## A. THE "JUVI" THREATS - COERCING A CHILD

### Quote #36: "If He Runs Away, He's Going To Juvi"

*TIMESTAMP: [00:31:42]*

> **[00:31:42] ANDREA SCHUCK:** *"But you know, at the moment, if he runs away, he's going to juvi."*

**FORENSIC ANALYSIS:**

Andrea explicitly states that if Bryce tries to go home to his father, the consequence is juvenile detention - not family reunification, not counseling, but incarceration of a minor.

### Quote #37: "So If He Wants To Stay With Me—" "He Goes To Juvi."

*TIMESTAMP: [00:33:45-00:33:47]*

ROB EMERT: "So if he wants to stay with me—"

> **[00:33:47] ANDREA SCHUCK:** *"He goes to juvi."*

**FORENSIC ANALYSIS:**

The exchange is unambiguous. If Bryce wants to live with his father, he goes to juvenile detention. This explains why Bryce remained with Andrea despite telling DDA Balerio he was "suffering" and needed his father.

## B. "SKYLAR FIRST" - CONSCIOUS DEPRIORITIZATION

### Quote #38: "I'm Going To Put Skylar First"

*TIMESTAMP: [00:37:15-00:37:30]*

> **[00:37:15] ANDREA SCHUCK:** *"No, but I'm going to put Skylar first, because right now Skyler's been last in this family and she deserves you first... She needs and right now she doesn't need Bryce. So that's why I'm willing to play ball with you."*

**FORENSIC ANALYSIS:**

Andrea explicitly states she is deprioritizing Bryce's needs in favor of Skylar. She says she "doesn't need Bryce." Meanwhile, DDA Balerio possessed Bryce's recorded statement: "Ever since my dad has been out of my life I've been suffering... I need him." The prosecution knew Bryce was suffering and knew his mother was consciously putting his needs last.

## C. THE BAIT-AND-SWITCH

### Quote #39: "I Offered You The Moon"

*TIMESTAMP: [00:52:41]*

> **[00:52:41] ANDREA SCHUCK:** *"I offered you, I offered you the moon."*

**FORENSIC ANALYSIS:**

Andrea admits she "offered the moon" (custody) to get Petitioner to plead guilty. After the plea was entered, she retracted.

### Quote #40: "I Will Not Send An Offer... Until You Drop Your Other Cases"

*EMAIL*

> **EMAIL - ANDREA SCHUCK:** *"I will not send an offer... until you drop your other cases."*

**FORENSIC ANALYSIS:**

This is the breach. After the plea was entered, Schuck (and by extension the State) added a new condition: "Drop your civil lawsuits." This condition was never part of the plea agreement. It is extortionate and renders the plea void.

## D. EMAIL EVIDENCE OF BREACH (CC: DDA BALERIO)

### May 18, 2023 Email (CC: DDA Francesca Balerio):

> **[Email] ANDREA SCHUCK:** *"We are not in negotiations."*

**FORENSIC ANALYSIS:**

The prosecutor was copied on this breach. She witnessed the plea inducement being withdrawn. She took no remedial action. Under Santobello, this breach alone invalidates the plea.

# PART V: THE FBI TRANSCRIPT - THE FABRICATED THREAT

**Date:** December 2022 (11-minute call) | **Followed by:** 2.5-3 hour face-to-face FBI assessment

**Status:** FULL TRANSCRIPT SUPPRESSED FOR 90 DAYS - ONLY "BLURB" PROVIDED

DDA Balerio held Petitioner 90 DAYS WITHOUT BAIL based on a claimed "threat to the FBI." The full transcript - suppressed until after the plea - proves this was a fabrication. Petitioner denied making any threats at least THREE times during the call, and the FBI operator ended the call by wishing him a "great day."

## A. THE EXCHANGE THAT DESTROYS THE "THREAT" ALLEGATION

**Quote #41: FBI Operator's Direct Question - Petitioner's Explicit Denial**

*TIMESTAMP: [00:06:27 - 00:06:37]*

> **[00:06:27] FBI OPERATOR:** *"You don't have any intentions of hurting anybody, correct?"*
>
> **[00:06:33-37] PETITIONER:** *"Well, like I said, I am not making any threats. I need to make that perfectly clear. I've not made any threats whatsoever. I'm not a violent person, but I know my Second Amendment right."*
>
> **[End of call] FBI OPERATOR:** *"OK, so I will document all this information here on my end, Sir. OK. Thank you for calling the FBI. I hope you have a great day today."*

**FORENSIC ANALYSIS:**

A trained FBI operator directly asked about violent intent. Petitioner gave an explicit, unambiguous denial: "I need to make that perfectly clear. I've not made any threats whatsoever." The operator showed no alarm and wished him a great day.

Yet DDA Balerio extracted fragments out of context—a reference to "Second Amendment" rights—and used them to hold Petitioner 90 days without bail.

**Consider what DDA Balerio actually did:**

She sat on this case for over a year while her own investigator said it lacked merit. She then fabricated a "threat" from an FBI call that the FBI itself cleared as non-threatening. She used that fabricated threat to cage a citizen with zero criminal history and zero flight risk for 90 days. She withheld the full FBI transcript that would have exposed her lie. She withheld the FBI's in-person threat assessment—conducted at the FBI field office—that cleared Petitioner entirely. She never charged PC § 422 (criminal threats)—because she knew the charge would never survive scrutiny.

**The "threat" was never a threat. It was a tool.**
A tool to detain. A tool to break. A tool to coerce a guilty plea to a case her own investigator said should never have been filed.
**What kind of prosecutor fabricates a threat, suppresses the evidence disproving it, and cages an innocent man for 90 days to extract a plea?**
The kind now hiding behind the Attorney General's refusal to produce the evidence.

**Quote #42: First Denial [00:04:16]**

> [00:04:16] PETITIONER: *"I, you know, I'm not a violent person and I'm not making any threats whatsoever, but I know my federal rights."*

**Quote #43: Third Denial [00:07:58]**

> [00:07:58] PETITIONER: *"So they put the pause button on this thing because if they send somebody out again, I am not making any threats."*

**Quote #44: The Purpose of the Call [00:07:52]**

> [00:07:52] PETITIONER: *"I'm calling to ask the FBI to put the pause button on this thing... so somebody doesn't get hurt."*

**FORENSIC ANALYSIS:**

Petitioner called the FBI to de-escalate and seek legal intervention. The Prosecution used out-of-context snippets from this call to claim Petitioner was a "danger," securing a "no bail" hold.

## B. THE FBI FACE-TO-FACE ASSESSMENT

Following the call, the FBI conducted a 2.5-3 hour face-to-face assessment with Petitioner. The agent's conclusion: "You're not a threat, dude." This assessment was provided to DDA Balerio. She suppressed it.

## C. DDA BALERIO NEVER CHARGED PC § 422 - PROOF SHE KNEW

**The most damning proof that DDA Balerio knew the "threat" was fabricated: she NEVER FILED PC § 422 (criminal threats) charges. If she genuinely believed Petitioner made criminal threats to the FBI, she would have charged it. She didn't - because she knew it would never survive scrutiny. Instead, she used the fabricated "threat" solely as pretextual leverage to deny bail and coerce a guilty plea.**

# THE INTERCONNECTED PATTERN OF SUPPRESSION

The six categories of evidence are not isolated incidents. They form a coordinated pattern of constitutional violations designed to secure a conviction the State knew was unjust.

| EVIDENCE | WHAT IT PROVES | WHY IT WAS SUPPRESSED |
|---|---|---|
| DAI Peña Recording | State's investigator believed no crime occurred, prosecution was retaliatory, warrant was coerced | Would have given Petitioner confidence to proceed to trial instead of accepting coerced plea |
| DDA Balerio-Bryce Interview | "Victim" told prosecutor his father "saved" him and he wanted to live with him | Would have destroyed prosecution theory and proven "good cause" defense |
| PC § 278.7 Defense Correspondence | From October 2021 through December 2022—over fourteen months—Petitioner sent extensive email correspondence directly to the DA's office documenting his complete statutory defense: medical records showing Bryce's emotional abuse, evidence of facility placement threats, and legal analysis of his rights under PC § 278.7. **The DA possessed Petitioner's complete defense before they ever filed charges.** | Would have proven "good cause" defense—which their own investigator later validated: **"I think you have good cause for sure"** [02:38:13] |
| Badillo Recordings | Prosecutor knew plea was induced by custody promises that were immediately breached | Would have required enforcing promises or vacating plea |
| Andrea Schuck Evidence | Promise made, promise breached, prosecutor witnessed breach | Documents the *Santobello* violation in writing |
| FBI Transcript | No threat was made; FBI cleared Petitioner | Would have destroyed pretextual basis for 90-day no-bail detention that produced coerced plea |

**The Pattern:** At every stage—investigation, prosecution, plea—the State possessed evidence that would have prevented the conviction. At every stage, that evidence was suppressed. This is not accident or oversight. **It is deliberate constitutional misconduct.**

**The most damning proof of intent:** The DA received fourteen months of detailed correspondence proving Petitioner's PC § 278.7 defense. Their own investigator reviewed the file and confirmed: "I think you have good cause for sure." They suppressed the investigator's admission. They never disclosed the correspondence to defense counsel. They prosecuted

anyway—a case they knew was meritless, against a defendant they knew had a complete statutory defense, validated by their own investigator.

**This was not a prosecution seeking justice. It was a persecution seeking silence.**

## THE ULTIMATE VINDICATION

On Bryce's 18th birthday - March 14, 2024 - the moment of legal autonomy when he could finally make his own choice - he moved back home with Petitioner. Under Andrea's custody, he had no diploma, no license, and "almost no outlets to the world." Within months of returning to his father, he obtained his diploma, his permit, and enrolled in college.

**The alleged "victim" chose to live with the alleged "abductor." That is the ultimate vindication - and the final proof that every participant in this prosecution knew they were prosecuting an innocent man.**

# RELIEF REQUESTED

Based on the foregoing forensic analysis, Petitioner respectfully requests that this Court:

**1. GRANT the Petition for Writ of Habeas Corpus**

**2. VACATE the judgment of conviction entered on April 3, 2023, in San Diego Superior Court Case No. SCD290570**

**3. ORDER Petitioner's immediate release from all terms of probation, parole, or supervised release**

**4. ORDER Respondent to produce, within 14 days, a sworn declaration under penalty of perjury stating:**

   a. Whether she requested the prosecution file from the San Diego DA

   b. If so, when and what materials were received

   c. Whether any audio recordings were included

   d. For each category of Brady material: EXISTS / DOES NOT EXIST / CANNOT BE LOCATED

**5. DRAW ADVERSE INFERENCES if the Attorney General fails to produce the materials Petitioner has demonstrated he possesses**

**6. DEEM the Schlup actual innocence gateway satisfied based on the evidence presented herein**

**7. ORDER an evidentiary hearing on the Brady violations, coerced plea, and prosecutorial misconduct**

**8. IMPOSE SANCTIONS on the Attorney General for violation of Rule 11 and the duty of candor to the tribunal**

**9. GRANT such other and further relief as the Court deems just and proper**

# CONCLUSION

The evidence presented in this Appendix is not speculative. It is not alleged. Petitioner possesses it. The question is why the Attorney General refuses to produce the State's copies for over 70 days while claiming the lodgment is "complete."

The answer is obvious: these recordings are devastating. They prove the State's own investigator believed no crime occurred. They prove the prosecutor heard the "victim" exonerate his father and suppressed it. They prove the plea was induced by promises the prosecutor knew would be broken. They prove the 90-day no-bail detention was based on a fabricated "threat" the prosecutor never charged because she knew it was false.

Her silence is not neutral. It is a confession.

---

### END OF APPENDIX A
*This Appendix is an integral component of Petitioner's Traverse*

---

Dated: January 20, 2026

Respectfully submitted,

/s/ Robert Emert
ROBERT EMERT
Petitioner, Pro Se